Morell *v.* Buffalo & Susquehanna C. & C. Company, Appellant.

Argued April 14, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*John J. Pentz,* and with him *W. C. Pentz* and *Ross H. Pentz,* for appellant.

*Edward Friedman,* and with him *Charles J. Margiotti, W. M. Gillespie* and *S. C. Pugliese,* for appellee.

Opinion by Cunningham, J., July 8, 1931:

William Morell, employed for a number of years by defendant as a coal loader in one of its mines at Sykesville, in returning, August 6, 1929, from the place of his employment in the mine to the foot of the shaft, was riding on an electric motor locomotive; his head

accidentally came in contact with the roof of the mine and injuries were inflicted which resulted in his death the day following. His dependents are his widow, Anna Morell, claimant herein, and an infant son.

The issue in the case is whether the employe, by riding on the motor, so took himself out of the course of his employment as to prevent his dependents from recovering the compensation they would otherwise have been entitled to receive. The controlling facts are not in dispute; the compensation authorities disallowed the claim; the court below held the law had not been properly applied to the facts by the board, and (Rakie v. Jefferson and Clearfield Coal and Iron Co., 259 Pa. 534) entered judgment awarding compensation as therein specified. This appeal is by the employer from that judgment. The referee's disallowance was based upon his conclusion that the employe, at the time he received his injuries, was engaged in a violation of the mining law, amounting to a misdemeanor. The board affirmed this finding and added one to the effect that the employe was also out of the course of employment because "he was engaged in an act contrary to the orders of his employer, in connection with an instrumentality in respect to which he was a trespasser." Its final conclusion of law reads: "Decedent, by boarding the motor, violated the mining laws of Pennsylvania and a posted rule of the employer, in either case, or both cases, taking himself out of the course of his employment." On appeal, the common pleas, being of opinion, as stated by it, "that a very material question of fact was not passed upon either by the referee or the board," and apparently exercising its power to remit the record to the board for more specific findings of fact, returned it with directions to find certain facts as particularly detailed by the court in its order. The board returned the record with additional findings of fact relative to

the circumstances under which decedent had boarded and was riding upon the motor. The court below states in its opinion that, although the board "did not adopt the exact language of the court" in its additional findings, they were substantially in accordance with the directions of the court. Assignments of error one to five, inclusive, are based upon the procedure thus adopted by the court below.

This record discloses several matters of procedure which might justly be made the subject of criticism. We are not to be understood as approving the blending of findings of fact and conclusions of law apparent in the opinion of the board or the action of the common pleas in undertaking to direct the board to make certain findings of fact as specified by the court. The power to return the record for more specific findings when, in the opinion of the court, those found are not sufficient to enable the court to decide the question of law raised by the appeal does not include the power to direct what facts the board shall find; the statute requires the compensation authorities to find the facts and the court to accept their findings, if specific and supported by competent evidence. The court can neither find a fact or facts itself nor order the board to find any particular fact. The facts as ultimately found by the board are fully sustained by competent evidence; no harm came to either party through the errors referred to and we therefore proceed to the merits.

Rule 5 of article XXV of the Bituminous Coal Mining Act of June 9, 1911, (P. L. 823), relating to the duties of motormen and locomotive engineers, provides, inter alia, that a motorman "shall not allow any person except his attendant to ride on the locomotive or on the full cars." By section 2 of article XXVI (P. L. 831) it is enacted that "any person who neglects or refuses to perform the duties required of

him by this act, or who violates any of the provisions or requirements thereof, shall be deemed guilty of a misdemeanor, and shall upon conviction thereof'' be punished as therein provided. The facts explaining the employe's presence on the motor at the time of the injury may be thus stated: Morell and DeChurch, his brother-in-law and ''buddy,'' began their work of loading coal into cars about seven o'clock that morning. The employer, to enable its employes to reach their working places in different portions of the mine, operated each morning about 6:45 what is described in the testimony as a ''man trip'' from the bottom of the shaft, i. e., a train of unloaded mine cars drawn by a motor. A similar trip started from the inside of the mine at 3:15 each afternoon to accommodate employes returning from their work. The company also maintained appropriate ''manways'' for the accommodation of employes walking in and out of the mine when necessary. Morell and De-Church finished loading the available coal about nine o'clock and went from their working place to the main road or heading of the mine, at a point described as the ''sixth left switch,'' referring to a switch from the main track laid in the heading. On the switch was then standing a small motor designated as a ''reel'' motor, in charge of Stowe Weber and his attendant, waiting for an empty trip. They asked Weber to permit them to ride to the bottom of the shaft on this motor. Before he had made any reply a large motor arrived on the main track, traveling toward the outlet. On this motor, in addition to its motorman and his attendant, were George Plant, the superintendent, having, on behalf of the employer, immediate supervision of the mine; Alex Bruce, the acting mine foreman, in charge of the inside workings and the persons employed therein; Vincent Kramer, the fire boss; and one McGinnis, a powder demonstrator. The large

motor stopped opposite the "reel" motor, with a distance of ten or twelve feet between them. Kramer dismounted and asked Morell and DeChurch why they were going home. Upon receiving the explanation that there was no more coal ready for loading, Kramer stated that the large motor was so crowded there was room for only one more and, turning to Morell, said, "Bill, if you can find room on our motor you can go down with us." Weber, the motorman on the small motor, then said, according to his own testimony, "I am not doing anything and I will take them down and will follow you fellows down." Plant, the superintendent, testified that he heard Weber say he would take them down. Bruce, the acting foreman, also heard him say he was going to take them out and testified that neither he nor the superintendent made any objection or gave any instructions to the contrary. The large motor then proceeded, followed by the "reel" motor, with DeChurch sitting beside the motorman and Morell riding "back in the motor." The accident happened on the main track some place between the switch and the bottom of the shaft.

After the record had been returned, the board found, inter alia, "that the superintendent, assistant foreman and the fire boss heard Stowe Weber say he would take decedent on his motor and made no protest, nor warned either the motorman or the decedent that such would be a violation of law." In addition to the rule above quoted, the board and appellant's counsel refer to the general rules 8, 9 and 10 of article XXV (P. L. 827), the first providing that no person shall be allowed to travel on foot to and from his work on any hoisting slope, incline plane, dilly or locomotive road; the second, that no person shall ride upon or against any loaded car or cage in any shaft or slope; and the third, that no person, other than the driver or trip rider, shall be allowed to ride "on the full

cars." As the employe was not traveling on foot or riding on a loaded car or cage, we cannot see that these rules are in any way involved in this case. Rule 27, article XXV (P. L. 829) is also invoked. It reads in part: "No person ......shall travel to and from his work except by the traveling way assigned for that purpose." Notice was posted at the mine opening directing attention to article XXV, rule 27, and article XXVI, clause 2, above quoted, and reading: "All persons found traveling on haulage road other than those designated by law will be dismissed from service and prosecuted in accordance with law." This is the "posted rule" referred to by the board in its conclusion of law. We see no substantial ground for the distinction apparently drawn by the board between the mining law and the posted rule. The rules are a part of the law and are equally binding upon the employer and its employes. The evidence shows a violation of that part of rule 5 which prescribes that the motorman shall not allow any person except his attendant to ride on the motor, but the violation was committed by Weber, the motorman. This rule is found under the heading, "Duties of Motorman and Locomotive Engineer;" its prohibition is aimed at the motorman; if anyone was guilty of a misdemeanor, clearly the motorman was. He was neither prosecuted nor dismissed. Nor are we convinced that the board made a correct application of the law to the facts in concluding that the employe had taken himself out of the course of his employment because he was engaged in an act contrary to the orders and rules of his employer "in connection with an instrumentality in respect to which he was a trespasser." The board cited Dickey v. Pittsburgh and L. E. R. R. Co., 297 Pa. 172. In that case our Supreme Court, after referring to its holding in Shoffler. v. Lehigh Valley Coal Co., 290 Pa. 480, that injuries suffered in the "course of his em-

ployment'' do not include, inter alia, ''injuries received in the commission of an act which is in direct violation of the law, or an act contrary to the positive orders of the employer,'' explained that the latter classification was intended to include only those acts which are in direct hostility to and in defiance of positive orders of the employer concerning instrumentalities, places or things, about or on which the employe has no duty to perform and with which his employment does not connect him, and as to which instrumentalities he is in the position of a stranger or trespasser. In the case cited the employe was a shop watchman and was repeatedly instructed to use a certain board walk from the station to the carpenter shop. In violation of his instructions he took a short cut of about half the distance across tracks and was killed. In sustaining the disallowance of compensation to his dependents the Supreme Court said, at p. 176: ''Here was a plain violation of positive instructions. It concerned a matter designed for the safety and protection of employees. He had no duty to perform on the place of the accident or the instrumentality that killed him nor did his work bring him in any manner in contact with them; as to these he was a stranger. To sustain a different theory would weaken the beneficial effect of the law, take from the employer all opportunity to guard against accident and make discipline in a plant merely a thing of words only. Where an employee violates a positive rule as to entering forbidden parts of the owner's premises about which he has no duty to perform, or disobeys instructions against starting machinery or other dangerous agencies with which his work is not connected, and with which he has no business, and an injury results, he not only violates the orders of his employer, but is in the position of a trespasser, who without right, authority or permission enters forbidden ground.''

Here the situation was entirely different. Morell was not riding on the motor in defiance of rules and positive orders of his employer; he was there with the knowledge and tacit approval of the employer's superintendent, the official charged, under the statute, with the immediate supervision of the mine on its behalf, and with the knowledge and similar acquiescence of the acting foreman, placed by the employer in charge of the inside workings and of the persons employed therein. Moreover, he was there in accordance with the actual arrangement made, in their hearing, between the fire boss and the motorman. Under these circumstances there was, in our opinion, no justification for concluding that he was a trespasser. So far as rule 27 is concerned it is not too much to say that he was traveling from his work in the "way assigned" to him on that occasion by the official representatives of his employer. It does not appear that a powder demonstrator has any more right to travel on a motor than has a loader. If any technical infraction of the rules occurred the highest operating officials were, under the evidence, equally responsible with the employe. They were still in the employ of the company at the date of the argument. The defendant should not be permitted to play fast and loose with the rules—condone their infraction by the officials charged with their enforcement and then set them up as a bar against recovery of compensation by the dependents of an employe killed while traveling from his work in a manner to which they had given their assent and approval.

We do not concur in all the reasoning of the court below, but a majority of the members of this court are of opinion that the judgment reversing the board and awarding compensation is just and in accordance with the legislative intent of the law under which it was entered.

Judgment affirmed.