Howey *v.* Peppard Bros. et al., Appellants.

Argued December 13, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*William A. Skinner,* and with him *Grant W. Nitrauer,* for appellant, cited: Lesko v. Lehigh Val-

ley Coal Co., 270 Pa. 15; Gausman v. Pearson, 284 Pa. 349; Zimmerman v. Weinroth, 272 Pa. 537.

*Frank S. Weiss,* for appellee.

OPINION BY TREXLER, P. J., March 3, 1933:

This is a compensation case. The widow claims for the loss of her husband. He was seventy-three years of age, and was a night watchman employed by Peppard Brothers, who were contractors. On June 5, 1930 he walked to his place of employment, a distance of about two miles. It was a hot day, unusually hot for that period of the year, being 83 to 85 degrees. He left his home about 3:30 o'clock in the afternoon. When he left, his wife noticed nothing unusual about him, just the same as other days. One of the truck drivers had returned about five o'clock to the employers' premises, and the decedent came and talked to him while he was putting gasoline in his truck. He ordinarily went on duty when the last truck was in. A witness says he "walked over" and spoke to him. After the witness had eaten his supper about 5:30 he happened to look over (presumably across the road) and saw "Pete," the claimant's husband lying on the ground, and after a short delay called the attention of other people to the fact and they went over, and found the decedent in an apparently dazed condition. When asked what was the matter he, in a mumbled voice, replied "nothing." There was a box near where the decedent was lying. A witness stated that there was what he considered evidence that the decedent had fallen off the box because the ground was "kind of mussed down where he dropped." This box was under an apple tree 8 inches in diameter and having a spread of about 20 or 25 feet described as a scraggly tree. They took him home. He was stiff. There was no vomiting or any other apparent disturbance. Dr. Egolf was called, came at six o'clock and

examined the patient. He testified there was no paralysis, a temperature of 102 and a pulse of 110. He diagnosed the case as sunstroke. At about ten o'clock his temperature was 99 4/10, and his pulse was in the 90's, and there was a paralysis of the right arm and leg due to cerebral hemorrhage. The man died June 19, 1930. The doctor was asked on cross-examination "if the hospital record in this case show that he [the patient] had a blood pressure of 180, then that condition might have been the cause of the stroke of apoplexy." The answer was, "Might have been, yes." That such pressure would indicate hardening of the arteries and might cause cerebral hemorrhage, and apoplexy. The doctor disclaimed any knowledge of what caused the sunstroke whether it was a result of the exposure to the sun on his way to work, or afterwards. He stated, however, that a rest under a shade tree would be calculated to avoid being overcome by the heat. The hospital records produced showed a blood pressure of 180 to 190.

The referee decided that the decedent did not die of any accident or untoward event occurring in the course of his employment, or rising out of such employment. The Workmen's Compensation Board did not agree with the conclusion reached, but found that the death of claimant's decedent resulted from an accident which occurred in the course of his employment. Apparently it took the view that whenever a sunstroke occurs at the place of employment the injury is compensable. There is no evidence that the decedent did anything after he arrived at the place of his employment except, according to the testimony of a witness (not in accord with the others) walk across the road to a barn where he sat in a chair for thirty minutes, and that he had a conversation with the truck driver, above mentioned. After decedent arrived at his place of employment the mere fact of his having a sunstroke would not entitle his widow

to compensation. The employer is not an insurer. The right to compensation must be found within the terms of the act, and the duty of proving the accident and its cause lies in the claimant. To find out what occasioned the sunstroke from the evidence that is presented is mere guess work.

One can readily conclude that a walk of two miles on a hot day by a man 73 years of age might produce a sunstroke. There is nothing in the case that shows that it was induced by any act of the claimant's decedent after he arrived at his place of work. In Lane v. Horn & Hardart Co., 261 Pa. 329, 104 A. 615; recovery was allowed for heat prostration, but there the decedent was working at a lunchcounter on a hot day. His activity contributed to what was described as "an accident." Neither that case nor the decisions following indicate that the mere fact that a man has a heat stroke on the premises of his employer, without anything more appearing, allows recovery. In the Lane case supra the claim was allowed "Under the circumstances," and in the leading case of Ismay, Imrie & Co. v. Williamson, Law. Rep. A. C. 1908, 437 quoted in the above case the man died from "a heat stroke coming suddenly and unexpectedly upon him while at work." There is nothing in our case that shows that the sunstroke was induced by any act of the decedent. Nothing appears to warrant any definite conclusion in this regard unless it be, as already stated, the two mile walk in the sun on a hot day in going to the place of his employment. There is absolutely no proof of subsequent activity of the decedent in the heat, or of exposure to the sunlight.

We do not purpose to review the numerous cases defining what constitutes an accident under the act. In the very recent case of Lacey v. Washburn & Williams Co., 309 Pa. 574, Judge DREW has discussed the matter very fully, and has made reference to a num-

ber of pertinent cases, and it would serve no useful purpose to repeat what is contained in his opinion.

Before leaving the case we wish to call attention to the fact which seems to have been overlooked, that under the Act of June 2, 1915, P. L. 736, the hospital records of medical or surgical treatment given to an employee in such hospital are admissible as evidence. The word "employee" in this connection does not apply as suggested to an employee of the hospital, but an "employee" as defined in Article 1, Section 104 of said act. We may add that the lower court apparently not satisfied with the facts as found by the board made a number of findings. It is not within the province of the court to do this: Morell v. B. & S. C. & C. Co., 103 Pa. Superior Ct. 316, 158 A. 192.

The judgment of the lower court dismissing the appeal and affirming the finding of the compensation board is reversed and judgment is now entered for the defendants.