Sinkiewicz *v.* Susquehanna Collieries Company, Appellant.

Argued October 22, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, PARKER and JAMES, JJ.

*Henry A. Gordon,* and with him *T. G. Wadzinski,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY PARKER, J., December 18, 1934:

The judgment entered below is attacked on the grounds that there was not any evidence to support the finding that there had been an accident within the meaning of the Workmen's Compensation Act and that causal connection was not shown between the alleged accident and death. More specifically, it is claimed by appellants that there was no evidence of the presence of poisonous gas, the alleged cause of death, at the location where decedent was working; that if there were gases present, their inhalation did not constitute an accident and was not shown to have been the cause of death.

The claimant's evidence was to the effect that on March 17, 1932, Adam Sinkiewicz, a miner 41 or 42 years of age, was employed in the collieries of the defendant and was engaged with fellow workmen in firing charges of dynamite; that three holes with four sticks in each hole were fired at intervals of ten or fifteen minutes; that decedent, who had previously been in good health, returned to the sites of the shots where there were quantities of smoke not unusual in amount; that he was immediately taken ill and complained of his condition; that he left his work and consulted a physician between 4 P. M. and 5 P. M. of the same day and died early in the morning of March 18th, the day following the accident. The physician who attended Sinkiewicz testified: "Q. What was the cause

of death? A. Lack of oxygen I found. When I went there after he was home, he was washed up and felt a little better. He looked very pale and showed the lack of oxygen in his system. Before his death he went into a comatose condition; seemed like he was under the influence of a narcotic. He could be aroused but he couldn't talk and developed paralysis of the face muscles. Q. Doctor, what did you conclude caused the paralysis of the face muscles. A. The exposure to powder and smoke, probably nitrogenous products given off from an explosion. Q. What did you ascribe as the final cause of death? A. Lack of oxygen; exposure to the smoke and dynamite ingredients. Lack of oxygen and eventually went into a coma and his heart stopped."

The defendants, to meet the testimony of claimant's witnesses, called various employes and offered evidence tending to show that the mine was ventilated by an efficient process which was working properly; that no unusual conditions in the ventilating system existed; and that the other workmen were not affected by such smoke as was present. The defendants did not call any physician or other expert to rebut the testimony of claimant's physician.

It is a well known scientific fact that dynamite is nitro-glycerin absorbed in a porous material and that when discharged it gives off large volumes of poisonous gases. While it would not be possible for an ordinary workman present at the time to know the chemical nature of the gases produced, such an explosion and the presence of smoke would furnish the basis for a fair inference that such gases as were ordinarily produced by such an explosion were still present and that those gases were in a position where they could be inhaled. The claimant is also entitled to the benefit of the inference that may be drawn from the

result produced. While the mere fact that the decedent was taken ill while on the premises of the defendant is not sufficient to support an award of compensation (Howey v. Peppard Bros., 108 Pa. Superior Ct. 119, 123, 164 A. 920; O'Neill v. Lehigh Coal & Nav. Co., 108 Pa. Superior Ct. 425, 165 A. 60), the decedent before the accident was in good health and as soon as he inhaled the air where the dynamite had been discharged was taken ill and died in less than twenty-four hours. These facts were accompanied by the testimony of the attending physician who testified to the symptoms shown by the decedent and asserted that the cause of death was lack of oxygen and the inhalation of poisonous gas.

We are of the opinion that there was sufficient evidence from which it could be inferred by the fact-finding body that gas was present and its inhalation was the cause of death. We cannot substitute our judgment for that of the referee or board to whom is delegated the exclusive function of determining facts: Morris v. Yough C. & S. Co., 266 Pa. 216, 219, 109 A. 914; Todd v. Lehigh V. C. Co., 297 Pa. 302, 146 A. 893.

That the facts we have detailed did not show an accident is also not tenable. In the case of Gerst v. Smith-Faris Co., 107 Pa. Superior Ct. 30, 162 A. 490, we had occasion to consider the precise question here raised. This court, by STADTFELD, J., there said (p. 44): "Death resulting from carbon monoxide poisoning is an accidental death and under our decisions is compensable: Pataky v. Allen Motor Co. et al., 100 Pa. Superior Ct. 343; Dimarcantonio v. State Fund, 15 D. & C. 56. Death resulting from heat exhaustion constitutes an accidental injury within the meaning of the Workmen's Compensation Law: Clemens v. Cornish, 295 Pa. 73; Matis v. Schaeffer, 270 Pa. 141; Lane v. Horn and Hardart Baking Co., 261 Pa. 329." This

is not one of that line of cases where a claimant is shown to be suffering from a disease such as arteriosclerosis or a disease of the heart shown to be present prior to the accident and where there is room for an inference that the death was one that might have occurred in the natural progress of the disease. Here, so far as the testimony discloses, the decedent was in good health and no other cause of death is suggested by the evidence.

Judgment of the lower court is affirmed.