Molek, Appellant, *v.* W. J. Rainey, Inc.

Argued April 18, 1935.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*H. Russell Stahlman,* for appellant.

*Joseph W. Ray, Jr.,* of *Shelby, Hackney & Ray,* for appellee.

OPINION BY CUNNINGHAM, J., December 11, 1935:

In this workmen's compensation case the appellant (claimant below) seeks to recover for injuries sustained as the result of a fall down an embankment shortly after stopping his work at defendant's mine. The referee disallowed compensation, and his action was affirmed by the board and also by the court below.

The following findings of fact made by the referee succinctly describe the mine property and the manner in which claimant received his injuries: "Third: The plant of the defendant is located along a main state highway near Fredericktown, Penna. On one side of the highway is the office of the company, the mine entrance and other buildings where the operations of the company are carried on, the foundation of the office building abutting the highway, the first floor of the office being approximately eighteen feet above the level of the state highway, there being no doors or entrances to the office from the state highway.

"Fourth: The only way provided by the defendant as an entrance to the mine, the office and other buildings is by way of a private road which begins at the state highway some short distance south of the office building, leading off at [an] angle to the state highway and in a northeasterly direction and towards the lamp shanty and mine entrance and to a level plot in front of the office building, the private road being built of red dog and on a grade or elevation of eight to ten degrees, reaching its highest elevation at the office building.

"Fifth: This private road verging off to the right of the state highway forms a triangular piece of ground

with the office building at one end and the junction of the road and the highway at the other, this triangular piece of ground forming a steep bank between the state highway and the private road. About midway between the office building and the junction the triangular piece of ground is approximately thirteen feet wide and at this point there was some concavity of the ground, the ground being bare of vegetation, rocky and irregular and resembling a path, this condition of the ground being due to continued rains, the water running down from the private road and washing the red dog with it, and it was at this point that the claimant left the private road and started down towards the state highway, and as he left the private road the condition under foot was such that he could not keep his equilibrium and fell down this embankment to the concrete apron of the state highway and sustained his injuries.

"Sixth: On the opposite side of the highway from the premises above described the defendant maintains a parking lot where the employes of the defendant park their automobiles while at work for the defendant. This lot is also at the disposal of anyone who has occasion to stop at the office or mine of the defendant on business.

"Seventh: On the same side of the state highway as the parking lot and some 400 feet west of the state highway is the Monongahela River where the coal tipple of the defendant company is located, and at the time claimant sustained his accident and injuries, the defendant was operating this river tipple, the coal being transported by railroad from the mine past the office building and across an overhead bridge which crossed the state highway at the office building, and then on to the tipple where it was dumped into the barges on the river."

The referee found that the triangular portion of ground was included within the operating premises of

the defendant. However, he further found that claimant's act in descending the embankment and in failing to use the private road in leaving the premises involved disobedience of certain positive orders of his employer; and that as a result of such disobedience he was not to be considered as having been injured in the course of his employment.

1. In view of the scope which the argument has taken, it is necessary first to consider whether there was sufficient evidence that the triangular piece of ground down which claimant descended was in fact part of the operating premises. The employer asserts the contrary, and if it is correct in this contention it is, of course, unnecessary to discuss any other feature of the case. As indicated above, the referee found that the triangle of ground was included within those premises. His finding of fact on that point reads: "Ninth: On the triangular piece of ground and along the private road south of the office was the check house and oil house and a pipe line lies parallel to the private road, and we are of the opinion that all the land described in these several findings of fact, with the exception perhaps of the state highway, was operating premises of the defendant company, and we find as a fact that all the land described east of the state highway and particularly all the land described in the triangular piece of ground, the embankment between the private road and the state highway and the ground where the claimant missed his footing and fell and sustained his injuries was operating premises of the defendant company."

In our opinion, this finding is amply supported by the evidence. It is of course true that the word "premises" must receive a more narrow definition than that of "property." At the same time, we must give a common-sense meaning to the term. The line between what is to be considered premises and what is not must neces-

sarily be drawn in a somewhat arbitrary manner when considering a large mine property. The referee has drawn this line at the state highway. We believe this to be a finding in accord with established facts. Obviously, the premises did not terminate at the actual mouth of the mine. The company office is located on one side of the triangle. The second side is bounded by the private road leading up to the mine entrance, immediately behind the office building. Along this private road are located the check house and oil house. The actual operations of the mine were therefore carried on immediately adjacent to the triangular strip. Exactly across the state highway from this strip the employer maintained a parking lot where its employees, including the claimant, left their automobiles while at work. It is therefore logical to make the highway the line of demarcation, rather than narrowly to exclude from the premises the small triangular embankment.

In this connection, what we said in Feeney v. Snellenburg & Company et al., 103 Pa. Superior Ct. 284, 287, 157 A. 379, is applicable: "To be considered as happening on the 'premises' of the employer the accident must have occurred on property owned, leased or controlled by the employer and so connected with the business in which the employee is engaged, as to form a component or integral part of it. Thus a mining company may own a large tract of land on which are erected houses for its employees, with roads or walks intended for their use in going to and from the mines and to and from their outside activities. An accident to an employee while travelling on such a road or path, simply on his way to or from work, and while not actually engaged in furthering his employer's business, would not be compensable: Boscola v. Penna. Coal & Coke Co., supra, [90 Pa. Superior Ct. 456]; Short v. Hughes Coal Co., supra, [96 Pa. Superior Ct. 237]; Leacock v. Susquehanna Collieries, supra, [98 Pa. Su-

perior Ct. 581]; but having once entered the mine, an accident occurring while on his way to or from his work there, even though his actual place of work might be half a mile or a mile or more distant from its mouth, would be compensable: Price v. Glen Alden Coal Co., 100 Pa. Superior Ct. 260; Morell v. Buffalo & Susquehanna Coal & Coke Co., 103 Pa. Superior Ct. 316, 158 A. 192; Shickley v. P. & R. C. & I. Co., 274 Pa. 360, 362; for the mine or colliery constitutes the actual 'premises' where the employer carries on the business in which the employee is engaged."

2. The second question is whether there was any evidence from which the referee or board could reasonably find that, despite the fact the accident occurred upon the operating premises, claimant was out of the course of his employment because he was at a point where he was specifically forbidden to be by a positive order of his employer. It is here that we are unable to find any basis in the evidence for the findings made by the compensation authorities. These rested upon the existence of three signs posted by the employer, all of which read as follows: "Men are not allowed to cross these tracks to enter or leave the mine yard. Use road entrance." One of these signs was posted by the overhead bridge crossing the state highway at the office building, over which the coal was carried by rail from the mine to the tipple at the edge of the river to the west. The second sign was posted near the state highway, to the north of the office building. The third was in the yard behind the office, at a point where a wooden foot bridge led over the tracks to the mine. It is clear· from the mere recitation of these facts that the notices were not intended specifically to prohibit the use of the embankment as a way to reach the parking space on the other side of the highway. Their obvious meaning was to require that the employees approach the mine from the south

rather than to go in through the shops to the north or to cross the trestle over the highway. Even if taken at their face value, they made no reference whatever to the embankment. The attention of employees was directed to the anticipated danger of injury from a railroad accident, rather than from any use of the embankment as distinguished from the private road. As we said in Robertson v. Rieder & Sons, 114 Pa. Superior Ct. 518, 174 A. 604, the burden of proof rests upon the employer to show a violation of orders on the part of the employee. We are convinced that the burden has not been met in this case. It is interesting to note in this connection that no sign at all was posted at the junction of the private road and the state highway, nor at any point along the embankment. Furthermore, until after the accident, no fence or other obstruction had been erected to prevent the use of the embankment as a way of leaving the premises. It is only natural to assume that if the embankment had been the subject of the prohibition, the notices would have been placed at some more logical points. While it is true there is some testimony in the record to the effect that the superintendent had given orders to his subordinates that the workmen should be kept off the embankment, there is no proof whatever that these orders had been in turn communicated to the employees generally. This proof is entirely too vague and indefinite to work a denial of compensation.

In the opinion of a majority of the members of this court the evidence not only justifies a finding that claimant was at the time of the accident upon the premises of his employer, but also compels the further conclusion that he was engaged in the necessary and proper act of leaving those premises, and that his method of departure was not in violation of any positive order.

The cases cited in behalf of the employer are not in

point, because they involve either an accident off the operating premises or an act in direct opposition to a known prohibition. Thus in Palla v. Glen Alden Coal Co., 105 Pa. Superior Ct. 96, 160 A. 157, it was found as a fact that claimant after finishing his day's work had left the mine by a road which defendant had forbidden its employees to use; while in Shickley v. Phila. & Reading Coal and Iron Co., 274 Pa. 360, 118 A. 255, claimant was found on a path 900 feet from the mine at which he worked—on the property of the defendant, but not on the premises of the particular colliery in which he was employed. The fact that an employee has not started or has finished his actual work is immaterial if at the time of the accident he is in fact on the premises of his employer. See Feeney v. N. Snellenburg & Co., supra, and Reese v. P. R. R. Co., 118 Pa. Superior Ct. 112, 180 A. 188. As was said in the last mentioned case; "When the employee enters that part of the property where his presence is required, he is engaged in the furtherance of the business of the employer even though he may not be performing the precise task which is the primary purpose of his employment or be at the precise bench, desk or other location regularly occupied by him."

The judgment in favor of the defendant is reversed; the record is remitted to the court below to the end that it may be returned to the board for a proper award of compensation.