## Morris, Appellant, *v*. Coal Mining Company of Graceton et al.

Argued November 9, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*David L. Ullman,* with him *George Jerko,* for appellant.

*Robert W. Smith, Jr.,* with him *Smith, Best & Horn,* for appellees.

OPINION BY ARNOLD, J., January 14, 1949:

In this workmen's compensation case the claimant is the widow of an employe of the defendant, who met his death in the coal mine in which he was employed. The referee and the board dismissed the petition, and the court below affirmed. The only defense presented was the affirmative one [1] that the decedent had

---

[1] Act of 1937, P. L. 1552, as amended (77 PS §431).

taken himself out of the course of employment by violating parts of the Bituminous Mine Act of 1911, or the positive orders of the employer. Appellant contends that the employer did not sustain its burden and did not produce a "clear preponderance of evidence that at least . . . approximates that required in criminal cases." [2] Appellant contends that there is actually *no* evidence to sustain such findings in favor of defendant.

On the day in question the decedent worked in a room off what is known as the "sixth butt," a heading leading into the main haulageway of the mine. At quitting time another employe pushed an empty mine car onto the track in this "sixth butt," and he, the decedent, and a co-employe got into it for the purpose of riding to the main hauleageway, where they could board a train of empty mine cars used for the purpose of hauling the men out of the mine, i. e., a man trip. The car in which the decedent rode moved toward the main haulageway through the force of gravity. It had no locomotive attached to it. Decedent was killed as a result of a collision with a train of cars loaded with coal which was being pushed out from a side switch into the main haulageway.

The point of collision was on the main haulageway, but the decedent and his companions had not yet reached the place where they were to be picked up by the man trip. Likewise at the point on the main haulageway where the collision occurred there was no man way or walk provided for the miners. Such a walk or man way began some distance nearer to the mouth of the mine.

The defendant relied on the decedent's alleged violation of rule 9 of the Bituminous Mine Act of 1911 (52 PS §1289) which reads as follows: "No person shall ride upon . . . *any loaded car* . . . in any shaft or slope in any mine. No person, other than the trip rider,

---

[2] *Haas v. Brotherhood of Transportation Workers*, 158 Pa. Superior Ct. 291, 297, 44 A. 2d 776.

shall be permitted to ride on *empty trips* on any slope . . ." (Italics supplied). The testimony of both claimant and defendant agrees that "a trip" is one or more mine cars attached to, and propelled or drawn by, a locomotive. It was therefore clear that the decedent was not "riding an empty *trip*"; and the evidence was without contradiction that the decedent was not riding in a loaded car. Since the referee properly found as a fact that this single car, moving without a locomotive, was not "a trip," it is quite apparent that the defendant did not establish any violation of rule 9. Nowhere does the Act prohibit riding on an empty *car*.

But the referee further held: ". . . this practice . . . [of riding an empty car] . . . [was] known as 'wild-catting'." Regardless of its name it was not forbidden under rule 9. The referee then held that ". . . this . . . 'wild-catting' . . . [was] prohibited by the mine management as well as being a violation of the Mine Act." As we have said, it was not a violation of rule 9, and we find no other rule in the Bituminous Mine Act which prohibited it. There remains, therefore, only the question of whether "wild-catting" was prohibited by the mine management.

The defendant's superintendent, Davis, testified that he never knew of any acts of wild-catting being done in the mine before the accident in this case. The defendant called an officer of the local mine union, who testified that the minutes of a meeting held about two months before the accident showed the following: "[Superintendent] Davis saw the Committee about riding *trips* out and in, and said it will have to be stopped. If he catches anyone riding, they will be turned over to the Mine Inspector." (Italics supplied). This evidence fails the defendant because "a trip" had already been defined and found to consist of one or more cars attached to a locomotive. In addition there was a total

absence of testimony that Morris, the decedent, was present at the meeting, and it was affirmatively shown that the decedent's two companions were not present at the mine meeting where that minute was recorded. The testimony of the secretary of the miners' union further shows that the complaint was the subject of a notice posted in the lamp house. The notice was addressed to all employes and copied substantially rule 9 of the Bituminous Mine Act, together with rule 35 making its violation a misdemeanor. The notice then stated: "Rule Number Nine above is being violated daily by certain employees at this mine and unless the man trips and man-ways are used as a means of travel, it is the intention of the management to start prosecution. . . . It is also the legal duty of the load drivers at this mine to see that nobody is permitted to ride loaded cars up a slope. H. R. DAVIS, Superintendent." This notice went no further than rule 9.

Because the referee had used the statement in his opinion that the decedent was engaged in "wild-catting" and "prohibited by the mine management," the claimant petitioned the board to be permitted to offer additional testimony regarding "the wild catting of cars, the riding of trips, and the specific instructions [of the employer]." To this application the defendant filed an answer that such testimony "would be immaterial and irrelevant, since it appears from the Record that the Referee refused to award compensation by reason of the fact that the testimony of the claimant's witnesses indicated that the decedent . . . was violating the Bituminous Mining Act at the time he was killed. . . ." The defendant thereby elected to stand squarely on the decedent's alleged violation of the Bituminous Mine Act and not any instructions of the employer. The board refused to take the additional testimony. It affirmed all the referee's findings of fact (including that which stated "that the car set in motion down the slope cannot be

considered a trip"), the conclusions of law and the order of disallowance made by the referee. It did, however, assert something new, to wit, that the decedent had violated rule 27 of the Bituminous Mine Act: ". . . and no person shall travel to and from his work except by the traveling way assigned for that purpose." There was no substantial evidence to sustain a finding that the decedent violated rule 27. The factual statements concerning this, given in the opinion of the board, are not only unsustained by the testimony, but there is, in fact, *no* evidence thereof. It is undisputed that from the place where the decedent boarded the empty car to the place of the accident on the main haulageway there was no "traveling way." Such traveling way (a sort of footpath) was in the main haulageway, but commenced nearer to the mouth of the mine than was the place of the accident. It is indisputable that there was no "man trip" that decedent could have boarded at *any* point between where he entered the empty car and the place of the accident on the main haulageway; and that the man trip (passenger train) provided by the company started at a point much nearer the main opening than was the place of accident.

The claimant appealed to the court of common pleas, alleging that there was no evidence to sustain any finding of violation of the law. The court below, without discussing the positive finding of the referee, affirmed by the board, that the empty car moving by gravity was not "a trip," and without discussing rule 9 or rule 27, or any violation thereof, came to the conclusion that the decedent violated §45 of the Act of 1937, P. L. 2486 (52 PS §1341), amending §1, Art. XXVI of the Bituminous Mine Act. It must be pointed out that the claimant was not permitted to meet any of these allegations except the violation of rule 9. Neither rule 9 nor rule 27 was violated; and §45, in our opinion, has no application. It reads: "Any person who shall inten-

tionally or carelessly injure any approved lamp, instrument, air course or brattice, or without proper authority handle, remove or render useless any fencings, means of signaling, apparatus, instruments or machinery, or shall obstruct or throw open airways, or enter a place in or about the mine against caution, or carry fire, open lights, matches, pipes and other smokers' articles beyond any station inside of which approved lamps are required by this act, or open a door in the mine and not close it immediately, or open any door the opening of which is forbidden, or disobey any order given in carrying out the provisions of this act, or do any other act whatsoever, whereby the lives or the health of the persons employed, or the security of the mine or the machinery, are endangered, shall be deemed guilty of a misdemeanor, and shall be punished as provided in section two of this article."

Criminal statutes must be strictly construed. In *Griffiths v. Kingston Coal Company*, 26 Luzerne Legal Register Reports, 173, Judge FINE (now a member of this Court) well said: "The appellant seeks to avoid liability on an alleged violation of a mining law prohibiting employees from riding on a loaded car. All of the testimony clearly shows that Griffith was riding on an empty car, . . . To convict the employe of violating the mine law, in the instant case, would enlarge the legislative intent of and subject to liberal construction a criminal statute, whereas it must be strictly construed. By the present mine law, the employe is prohibited from riding 'upon . . . any loaded car . . . (on) . . . any slope or plane . . .'; there is no inhibition against riding an 'empty' car on any slope or plane. The words of the Act are too clear to permit of any other interpretation. If it does not fully restrict the conduct of employees under mining conditions as now existing, resort may be had to the legislature for the necessary relief. Moreover, our compensation laws, it

is universally held, should be liberally construed in order to carry out the humanitarian purposes for which they were enacted." The same matter was before this Court in *Morell v. Buffalo & Susquehanna C. & C. Company*, 103 Pa. Superior Ct. 316, 321, 158 A. 192.

The court selected from §45 the words, "or do any other act whatsoever, whereby the lives or the health of the persons employed . . . are endangered. . . ." This was but an omnibus phrase, couched in general language. The enumerated offenses, whether negligently or intentionally done, have to do with things that make imminent the danger of a mine catastrophe such as an explosion, and conclude with the general language quoted by the court. This omnibus phrase or general language must be subject to the rule of construction of ejusdem generis. Otherwise this omnibus clause would make each negligent or thoughtless act of *any* kind a crime if it endangered the lives or health of persons employed, and therefore would render totally useless the many other sections of the Act creating criminal offenses, among them rules 9 and 27.

On the question of ejusdem generis the Supreme Court said, in *Derk et al. v. Zerbe Township,* 322 Pa. 350, 352, 185 A. 647: "It is clear that the ejusdem generis rule must be applied to the construction of this statute if it is to be given a reasonable meaning and purpose. Instances in which this rule has been applied are Butler's Appeal, 73 Pa. 448 (involving the construction of the words 'or other places of business or amusement') ; Black v. Pittsburgh, 230 Pa. 312, 79 Atl. 569 ('or other municipal district') ; Burns v. Coyne, 294 Pa. 512, 144 Atl. 667 ('or other creditors'). In all of these cases we held the general expressions quoted were restricted to things and persons similar to those specifically enumerated in the preceding language of the particular statute. This question is discussed at length in Lewis's Sutherland on Statutory Construction (2d

ed.), volume 2, page 814; Hardcastle's Construction and Effect of Statutory Law, page 199; Endlich's Interpretation of Statutes, chapter 14, page 554; Black on Interpretation of Laws, page 203; 25 R. C. L. 996, and 59 C. J. 981." See also *Frederick's Estate*, 333 Pa. 327, 5 A. 2d 91.

Since there is not only a failure of clearly preponderating evidence, but a failure of any evidence to show that the decedent violated the Bituminous Mine Act; or that he violated any instruction of the employer, we must reverse.

The judgment is reversed and the record remanded to the court below with directions to remit the same to the Workmen's Compensation Board, with instructions to enter an award in favor of the claimant in accordance with this opinion.