**Hayes v. York County Bridge, Inc.**

*Victor Dell'Alba,* for claimant.

*Robert J. Stewart* and *Frederick L. Fuges,* for defendants.

BUCKINGHAM, J., June 21, 1973.—These two cases involve an appeal by defendant-employer from the opinion and order of the Workmen's Compensation Board affirming the referee's award of compensation to the claimant and her six minor children, five of whom were born legitimately to the claimant and her deceased husband and the sixth being the illegitimate child of the claimant born to her before her marriage. At argument, counsel stipulated that jurisdiction for the appeal lies with the Court of Common Pleas of York County and if the order of the Workmen's Compensation Board is sustained, the award shall be for the claimant and all of the six children involved.

The record shows that claimant's deceased husband was employed by defendant at a quarry site owned by the Bethlehem Steel Company. His job was to help drive sheeting piles to build a foundation to prevent the railroad tracks from sliding into the quarry. The place where he worked was at one point only 25 to 30 feet from the lip of the quarry which was quite deep.

At noon, he started his one-half hour lunch period and together with his brother, had lunch at the workers' customary lunch spot about 200 feet from his place of work and about 150 feet from the lip of the open quarry. This was the only day he had carried his lunch, as he usually had gone off the premises to eat his noon meal. He finished his lunch in about 20 minutes and was last seen by his brother walking to-

ward the area where he was to commence work. His dead body was discovered at the bottom of the quarry about five or 10 minutes later.

The lip of the quarry where decedent fell was covered with small trees and thick underbrush. Defendant's brief refers to a metal barrier fence which separated the quarry from the rest of the area, but the record is clear that no such fence or any other safety device was there. Decedent's brother stated that the point where decedent fell into the quarry was about 100 feet from decedent's work site. The board concluded that this distance was nearer 150 feet. Toilet facilities were available to the workers 150 to 175 feet from the work area but roughly the same distance from the quarry as the lunch area. An aerial photograph introduced into evidence vividly illustrates that decedent's work site, his lunch site, the toilet facilities site and the edge of the quarry were compressed into a relatively small area. It further shows that if decedent traveled in a direct line from his lunch site to his work site, he would have come comparatively close to the lip of the unprotected quarry.

The record is emphatically clear that defendant's employes were not restricted by defendant in any way from going anywhere in the entire area above described. There were no orders, oral, written or posted, notifying the employes to stay away from the quarry area and there were no warnings whatsoever of the danger involved. There was no evidence adduced as to why or under what circumstances decedent approached the lip of the quarry.

Section 301(c) of the Pennsylvania Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, 77 PS §411, states that compensable injuries:

"[S]hall include all other injuries sustained while the employe is actually engaged in the furtherance of

the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment."

The board found that while there was no purpose shown for decedent being at the edge of the quarry, there could be several logical proper reasons for his presence there; that he was not trespassing, having violated no orders from his employer; that there was no evidence he had abandoned his employment and that his death was caused by the condition of the premises under the control of defendant. The board, therefore, held that decedent's death was caused while in the regular course of employment. We concur with all of these findings and conclusions.

There are many cases supporting the board. One of the latest is Fetzer v. Michrina, 8 Comm. Ct. 273 (1973). There, the claimant usually worked in the kitchen of a bar from 5 p.m. to 1 a.m. On the morning in question, she was seen returning to the bar by the back door at 1:45 a.m. She had a drink, purchased a four-pack of beer and left by the back door. She was found by the bartender at 2 a.m. at the foot of a flight of stairs outside of the back of the bar, permanently unconscious from head injuries. In affirming the award to the claimant, the court stated, at page 277:

"As to the claimant's compensability, of course, it is not the usual practice to award compensation for injuries suffered by employees going to or from their

work. An exception has apparently been made, however, for accidents occurring on the employer's premises. 'It is not necessary to entitle a claimant to compensation that the injury be sustained while the employee is actually engaged in the work he was hired to do . . . and the fact that an employee has not started his actual work is immaterial if at the time of the accident he is in fact on the premises of his employer . . . He is considered to be within the course of his employment if on the "premises" where he is employed a reasonable lengh of time before the hour fixed to commence his duties.' Wolsko v. American Bridge Company, 158 Pa. Superior Ct. 339, 345, 44 A. 2d 873, 875-876 (1945). The court in Wolsko, supra, went on to state that for an accident to be considered as happening on the 'premises' of the employer, it 'must have occurred on property owned, leased or controlled by the employer and so connected with the business in which the employee is engaged as to form a component or integral part of it.' 158 Pa. Superior Ct. at 343, 44 A. 2d at 875. Although this case cited was one where the accident occurred prior to the beginning of the employer's work day, it would also appear applicable to accidents which occur after the end of the working day. 'The fact that an employee has not started or has finished his actual work is immaterial if at the time of the accident he is in fact on the premises of his employer.' Molek v. W. J. Rainey, Inc., 120 Pa. Superior Ct. 95, 102, 181 A. 841, 844 (1935)."

And at page 279:

"A reading of the above and other cases would indicate that an accident is compensable if it occurs on the 'premises' of the employer and if the employee's presence on such premises was required by the nature of his employment. It is immaterial if the accident

occurred before or after the hours of employment, provided that an unreasonable amount of time has not elapsed before or after and the presence of the employee on the premises is reasonably related to the course of his employment. The term 'premises' is to be understood to include, not all of the employer's property, but only those portions thereof which are in or immediately adjacent to the employer's place of business where the employee concerned is employed, or which constitute a reasonable means of access thereto."

In Wolsko, supra, the court also had this to say, at page 345:

"In construing section 301 of the Workmen's Compensation Act of 1915, 77 PS §411, it was held, in Callihan v. Montgomery, 272 Pa. 56, 63, 115 A. 889, 891, that it is 'broad enough to include every injury received on the premises of the employer, during the hours of employment, so long as the nature of the employment demands the employee's presence there, regardless of whether his presence at the particular place where the injury occurred is actually required, if there is nothing to prove a virtual abandonment of the course of his employment by the injured person, or that, at the time of the accident, he was engaged in something wholly foreign thereto.' "

In Wolsko the employe was killed in the employer's shipyard 1,100 feet from his proper working place and there was nothing to show why he was there or that he was required by his employment to be there. In reversing the board and the lower court and awarding compensation, the Superior Court stated, at page 348:

"There is no sufficient testimony to show that he had abandoned his employment, or that he was engaged in something entirely foreign thereto, or that

he acted contrary to any positive orders of his employer, or that he was a trespasser. See Tappato et al. v. Teplick & Eisenberg Co., et al., 133 Pa. Superior Ct. 231, 236, 2 A. 2d 545. The burden of proof of any such affirmative defense was here on defendant."

We feel all of these principles apply in the present case. It seems clear that decedent fell to his death at a point on premises under the control of defendant. It was in close proximity to the place where he worked and he had a right to be there, or at least was not forbidden to be there. The burden was on defendant to show that decedent had abandoned his employment or was engaged in something foreign to it. This burden has not been met. The evidence must be viewed in light most favorable to the claimant and liberally in her favor, not narrowly: Shaffer v. Somerset Community Hospital, 205 Pa. Superior Ct. 419 (1965); Hesselman v. Somerset Community Hospital, 203 Pa. Superior Ct. 313 (1964).

Henry v. Lit Brothers, Inc., 193 Pa. Superior Ct. 543 (1960), contains language justifying the board's decision. The court stated, at page 549:

"Essentially, the principle established by our decisions is that the continuity of employment is not broken by engaging in play and recreation on the employer's premises during lunch hour.

"It is not necessary that the employe be actually engaged in work at the time of the accident: Dunphy v. Augustinian College of Villanova, 129 Pa. Superior Ct. 262, 195 A. 782. An incident necessary to constitute a break in the course of employment must be of pronounced character: Haas v. Brotherhood of Transportation Workers, 158 Pa. Superior Ct. 291, 44 A. 2d 776. We have held that an injury is compensable if received during a friendly wrestling match, McCoy v. Spriggs, 102 Pa. Superior Ct. 500, 157 A. 523, or boxing bout:

Sinko v. Bethlehem Steel Co., 104 Pa. Superior Ct. 357, 159 A. 230."

In Mitchell v. Holland Furnace Company, 189 Pa. Superior Ct. 82 (1959), the court indicated that even a departure from the course of employment, if it is a slight one, would not defeat compensation. The language in Tappato, supra, is helpful to the claimant. The court said, at page 234:

"In compensation cases where there are, as here, unexplained circumstances attending a fatal accident, the prevailing rule is that, if an employee was last seen at his work, he is presumed to have continued at his employment, in the absence of evidence to the contrary. In Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 483, 139 A. 192, the rule is thus stated, as follows: 'Under the Compensation Act, an injury in the course of employment embraces all injuries received while engaged in furthering the business of the employer, and injuries received on the premises, subject to these limitations: (1) the employee's presence must ordinarily be required at the place of injury, or, (2) if not so required, the departure of the servant from the usual place of employment must not amount to abandonment of employment, or be an act wholly foreign to his usual work; it must be merely an innocent or inconsequential departure from the line or place of duty.' In Flucker v. Carnegie Steel Co., 263 Pa. 113, 119, 106 A. 192, the court said: 'Where no facts appear indicating anything to the contrary, it may be presumed logically that an employee at his regular place of service, during his usual working hours, is there in discharge of some duty incident to his employment; and, when the dead body of an employee is found on the premises of his employer, *at or near* his regular place of service, under circumstances fairly indicating an accidental

death which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment.' It is not necessary, to entitle a claimant to compensation, that the injury be sustained while the employee was actually engaged in the work he was hired to do: Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454." (Italics supplied.)

In Dunphy v. Augustinian College of Villanova, 129 Pa. Superior Ct. 262 (1937), the court held that place of employment includes not only the place where the workman is employed but also the places used by the employe with his master's consent. In the present case, there were no restrictions on travel anywhere in the area which is an indication at least that decedent had implied consent to be in the area where he fell. In Komar v. Pennsylvania Railroad Company, 121 Pa. Superior Ct. 385 (1936), the court held that " 'a workman's employment is not broken by a short interval of time taken for the noonday meal, where he remains on the employer's premises (unless he is doing something that is wholly foreign to his employment).' " We find nothing in the present case to show that decedent was guilty of going outside of his employment. Molek, supra, indicates that where an employe is injured on a portion of the employer's premises from which he was not prohibited by posted notices or some other form of notice telling him to stay away from the area, the employer may not complain if compensation is awarded.

There are a number of Pennsylvania Supreme Court cases supporting the claimant. For example, in Callihan v. Montgomery, 272 Pa. 56 (1922), a mechanic, hired to maintain a specific pump, for some undis-

closed reason stepped into an adjoining pumphouse and was injured. He was held to be in the course of his employment. In Flucker, supra, an employe, who went home, drank some alcoholic beverages and then started back to his place of work and was found dead from a fall on or near the plant, was held to be in the course of his employment at the time he fell. Dzikowska v. Superior Steel Company, 259 Pa. 578 (1918), at page 582, contains some language remarkably pertinent to our case:

"What we regard as a sound statement of the principle involved, appears in 1 Honnold on Workmen's Compensation, Section 111, as follows: 'It cannot be said that the employment is broken by mere intervals of leisure such as those taken for a meal. If an accident happened at such a time, there will be no break in the employment, even though the workman is paid by the hour for the time he is actually at work, especially where the accident occurs on the employer's premises, or about his property, unless the workman is doing something that is wholly foreign to his employment. Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the workmen's compensation acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food, or fresh air, or to rest in the shade.' "

Hiles v. Hecla Coal & Coke Co., 296 Pa. 34 (1929), is still another case which supports the claimant. There, decedent was last seen at a point about 125 feet from his place of work and was headed in the direction of his place of work. It was at that point he suffered a fatal injury. In affirming compensation to the claimant, the court relied on the presumption referred to in Tappato, supra.

Defendant relies to a great extent on Hunter v. American Steel & Wire Co., 293 Pa. 103 (1928), but this case is distinguishable on its facts. There, the employe's place of work was confined to an engine room and he was found drowned in a river close to the shore of his employer's property. However, the distance from his place of work and his death was 350 feet and he had to pass over two railroad tracks, around the power house and over two more railroad tracks to get there.

The scope of our review is to determine whether or not there is substantial evidence to support the findings of the board, giving to the claimant, who has the award, the benefit of the most favorable inferences deducible from the testimony: Fetzer v. Michrina, supra. We have no hesitation in concluding that there was more than sufficient evidence to support the findings and conclusions of the board. We, therefore, enter the following

## ORDER

And now, to wit, June 21, 1973, the order of the Workmen's Compensation Board in favor of the claimant is affirmed.

An exception is granted to defendant.