## Jackson et ux. *v.* United States Pipe Line Company, Appellant.

Argued January 11, 1937. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*Thomas C. Gawthrop*, with him *Geary & Rankin*, for appellant.

*John B. Hannum, Jr.*, of *Hannum, Hunter, Hannum & Hodge*, with him *James Paul MacElree*, for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, March 22, 1937:

Appellant's pipe line ran across appellees' property, at one point eighty feet distant from a well which fur-nished them pure water suitable for drinking and do-mestic purposes. The pipe line, laid about thirty years ago, was never repaired prior to the time when oil was discovered in the water in the well in large quantities, the volume reaching as high as twenty-five per cent. The line was at a higher elevation than the well, and the intervening ground sloped downward toward the well.

There was no deposit of natural oil on appellees' property or in that vicinity, nor were there any other oil lines within three miles of the well. Appellees were manufacturing concrete fence posts and kept a ten gallon drum of crank case oil and a gallon can of gasoline inside a schoolhouse building twenty feet from the well. No oil or gas escaped from them, and they could not possibly have supplied the quantity of oil found in the well. When the polluted condition of the water was first discovered, appellant's superintendent was notified, and having made a personal examination of it, he told Jackson, one of the appellees, "there must be a leak in their line somewhere thereabouts," and "they would correct the difficulty." Thereafter appellant replaced a section of the pipe at a distance of about two hundred feet from the well and installed a valve which was later encased in a cement box. The section of pipe removed was very rusty and had a few holes in it, which looked like rust holes. Subsequent to this replacement, the amount of oil found in the well materially diminished, though the water was still contaminated at the time of trial.

Under the Act of June 2, 1883, P. L. 61, Section 2, appellant is liable without proof of negligence, if oil from its pipe line polluted the well. Appellant, not disputing this, strenuously contends that there is no direct proof of either a leak or seepage, both of which facts were necessary to appellees' case; that only by inferring the existence of a leak, and from that inference making the further inference that oil saturated the ground around the well and seeped into it can the verdict be susained, and that an inference cannot be founded on an inference. In *Neely v. The Provident Life & Accident Insurance Co.*, 322 Pa. 417, this court, quoting from Wigmore on Evidence (2nd ed.), Vol. 1, Sec. 27, said, "The conclusion and tests of everyday experience must constantly control the standards of legal logic," and at p. 426 refuted the very contention advanced here, stating: "It is equally obvious that inferences may be

founded on inferences, as they are in the investigations carried on by scientific men and in the everyday affairs of life."

The line between an inference and a fact established by direct proof may be difficult to draw at times. Here we have a pipe five inches in diameter through which oil was flowing. The pipe had holes in it. That oil escaped through these holes while flowing through the pipe seems to be more than an inference, since it is common knowledge that a liquid will escape from a container in these circumstances. This fact stands on a higher plane than what is usually termed a mere inference. That the pipe was at a higher elevation than the well and the ground sloped downward from the pipe to the well justifies the finding that the leaking oil ran down hill and contaminated the water in the well. Furthermore, these so-called inferences are reinforced by the fact that after the removal of part of the pipe and the installation of a valve with a cement casing about it, a diminution in the amount of oil in the well resulted. The testimony, excluding all other sources of contamination which might fairly arise from the evidence, was sufficient to satisfy reasonable and well balanced minds that the pollution was caused by a leak in appellant's oil pipe: see *Kapuscianski v. Phila. & R. C. & I. Co.,* 289 Pa. 388.

To prove that the drilling of an artesian well at a location approximately four hundred feet from the old well at an elevation above the pipe line was a necessary and reasonable measure to restore the former water supply, appellees called a witness who had been in the business of drilling artesian wells for thirty-four years and had been employed to locate and drill the new well. Before he was asked to give his opinion on this matter, he testified that he had gone down into the old well, examined it, discovered the presence of oil in the water, and was shown the location of pipe line. He was then asked whether it was necessary to locate the new well

where it was drilled. He replied in the affirmative, saying that as the ground was apparently saturated, due to seepage, the well had to be drilled at a point on the hill above the pipe line. The substance of the interrogation was proper expert testimony being removed from the realm of common experience, but appellant contends the admission of this testimony was erroneous, since Kohl himself had no personal knowledge of any leak or seepage, and there was no evidence to support such an assumption. His testimony does not bear this out. While expert opinions must be based on facts which are admitted or appear in the evidence and cannot be predicated upon assumed facts unsupported by evidence (Rouch v. Zehring, 59 Pa. 74, 78), they are not limited to assumed facts, hypothetically presented, outside the personal knowledge of the witness as their basis, but may be rendered solely on the basis of facts personally observed by him (Loeb v. Davidson, 261 Pa. 418; U. S. Horse Shoe Co. v. Amer. Ex. Co., 250 Pa. 527), or they may be based on personal observation combined with assumed facts appearing in the evidence: see Wigmore on Evidence (2d ed.), Vol. 1, Sec. 678. The basis of Kohl's opinion included both facts within his personal knowledge and assumed facts supported by evidence. He knew personally the respective locations of the pipe line and the well and the pollution of the well by oil. He assumed, as his answer clearly shows, that the pollution was the result of leakage in the pipe line and seepage. The latter facts, on the hypothesis of which he expressed his opinion in conjunction with the facts observed by him, appeared in the evidence. The court below did not commit error in permitting him to state his opinion.

The other assignments of error likewise must be dismissed. The portions of the charge of the court below regarding circumstantial evidence and the measure of damages were entirely adequate.

Judgment affirmed.