Troxell *v.* Shirk et al., Appellants.

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

Argued December 13, 1937. ■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■ Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ. ■■■■■■

■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

*Daniel L. McCarthy,* for appellants.

*Joseph B. Walker,* for appellee.

OPINION BY CUNNINGHAM, J., January 27, 1938:

This appeal is by an employer and its insurance carrier from a judgment of the court below entered upon an award of compensation to the claimant, under the provisions of Section 306(c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as finally amended April 13, 1927, P. L. 186, 77 PS §513, at the rate of $6.66 per week for the definite period of 125 weeks for the permanent loss of the use of her left eye.

Claimant was employed as a chambermaid at Hotel Hamilton and averred in her petition that on October 26, 1935, her left eye became sore from what was subsequently found to be a gonococcic infection; loss of the use of the member followed within three or four days. The answer of the employer and carrier was, in substance, that her disability was "not the result of any accident occurring during the course of claimant's employment." On that date claimant's eye, in her own language, "started to get stiff and later on it started to water." Thinking the trouble was due to a cold, she went to her physician the following day and was referred by him to Dr. John R. Mench, an eye, ear, nose and throat specialist, who diagnosed her trouble as "a case of gonococcic infection of the left eye."

The theory upon which the claim was presented and prosecuted and the award finally made, was that the source from which the gonococcus was carried to claimant's eye was soiled and infected bed linens and towels handled by her in the course of the performance of her duties in cleaning rooms and preparing them for occupancy by new guests of the hotel.

The question of law to be determined by us is whether there is upon this record any legally competent evidence

42

to support the ultimate finding of the board that the loss of the use of claimant's eye resulted from "an accident in the course of her employment." If so, the exceptions to the award were properly dismissed by the court below. Appellants offered no testimony before the referee, but contended claimant had not successfully carried the burden imposed upon her by the statute of showing, by legally competent evidence, that the infection was attributable to some undesigned unexpected and untoward, circumstance which happened while she was at work and was outside of the usual course of events.

There was competent and uncontroverted evidence of these facts: Claimant, a married woman sixty-one years of age, had been employed for more than a year as a chambermaid on the sixth floor of the hotel, returning to her own home by trolley each evening. She described her duties as "straightening out the rooms and making up the beds and putting them in order to be occupied." In the course of this employment, she was, "at times," obliged "to handle" linens soiled with "blood stains, splotches, and sometimes all yellow," which she gathered together and "put in a room where they were sent to the laundry." She did not undertake to fix any definite time (with relation to the date of October 26, 1935, or any other date) when she handled soiled linens or towels. She stated it was also her duty "to clean up the urinals and toilets" and that on two or three occasions she found articles used to prevent conception or disease, which she gathered up and discarded. The relative dates of these occasions were not fixed. Claimant also testified she had not visited any public toilet rooms or had any guests in her home. Mrs. Blanche Schadler, another maid who worked with claimant, also testified that "now and then" it was necessary to handle "stiff sheets and towels," but that she did not know what was on them.

There was competent medical testimony by Dr. Mench and Dr. J. J. Wenner, a pathologist, that the loss of the sight of the eye was due to a gonococcic infection of the conjunctival sac, which destroyed the cornea; that, as neither claimant nor her husband had any general gonorrheal infection, "freshly secreted and moist pus" containing gonococci not more than twenty-four hours old must have been carried from some outside source to her eye "by some instrument or by her hands or something of that sort"; and that the infection developed in the eye within four or five days after the introduction of the germs. These are the only basic facts established by the evidence.

The referee disallowed compensation on the ground that "claimant's condition ...... was not due to any untoward or unforeseen happening which occurred in the course of her employment." Upon claimant's appeal to it, the board set aside this finding and substituted its own findings to the effect that the mere entering of the gonococcic germs into claimant's eye was, in and of itself, such "a mishap, unexpected, undesigned, or untoward event, outside the usual course of her work," as to constitute an "accident" within the meaning of the statute. *McCauley v. Imperial Woolen Co. et al.*, 261 Pa. 312, 104 A. 617, was cited by the board and by the court below as authority for that proposition.

Appreciating that this finding of an "accidental" injury would not sustain an award unless it was also shown, in behalf of claimant, that the germs entered during the course of her employment at the hotel, the board then treated the opinions of her medical experts that she had rubbed her eye with infected bed linen or an infected towel, handled during her employment, as evidence competent to sustain the necessary additional finding that the germs entered during the course of her employment. Whether the opinions claimant's experts undertook to express upon that question had any evi-

dential value is one of the questions in this case and will be considered later.

Addressing ourselves to the issue whether this record contains any competent evidence that claimant suffered an "accident" within the meaning of the statute, it may be observed that the finding by the board upon this branch of the case goes beyond any of our appellate decisions. The competent medical evidence establishes only that at some time during the four or five days preceding October 26, 1935, and from some external source, the gonococcic germs were carried to, and entered, claimant's eye. Neither the lay nor medical evidence fixes the time or circumstances of their entrance. Unless, therefore, the mere entry amounted to "violence to the physical structure of [her] body" claimant has failed to establish one of the fundamental propositions essential to her case.

In the recent, and in some respects comparable, case of *Easton v. Elk Tanning Company,* 129 Pa. Superior Ct. 535, 195 A. 648, this court considered a similar contention. We there pointed out that in dealing with deaths or injuries from an infection, and whether the infection developed from germs within the body or entering from without, the resulting death or injury is not compensable in the absence of proof of an "accident" within the meaning of the statute. Reference was there made to *Micale v. Light and S. W. Ins. Fund,* 105 Pa. Superior Ct. 399, 161 A. 600, and *McCauley v. Imperial Woolen Co.,* supra, in both of which cases it was held that death or injury from a germ infection in order to be compensable must be shown to have been a sudden development from some abrupt violence to the external or internal physical structure of the body. Here, the evidence shows that the germs entered from the outside of claimant's body. It also shows there was a sudden development of the infection, but the serious question is whether there is any evidence of such abrupt, un-

expected or unforeseen, violence to the physical structure of claimant's body, within the week preceding the first symptoms, as is contemplated by the Act.

In each of the appellate decisions cited and relied upon by the board and the court below there was evidence of the happening of some unforeseen and unexpected occurrence outside of the usual course of events. In *McCauley v. Imperial Woolen Co.*, supra,—the anthrax case—there was evidence that when McCauley went to work in the morning he had no abrasion or mark upon his neck, but when he quit he had a scratch about the size of a dime on his neck which caused a swelling. The violence to the physical structure of the body of the employee shown in that case was that he was accidentally struck during the day with one of the "stickers" in the wool which he was carrying.

The general language quoted in the opinion of the board and the court below from the McCauley case must be read in the light of its facts.

In *Johnston v. Payne-Yost C. Co. et al.*, 292 Pa. 509, 141 A. 481, the cause of death was infection through a burn upon the nose of the employee, accidentally received while at work. The injury there was the burn.

In our case of *Piotrowski v. T. O. Dey Co. et al.*, 123 Pa. Superior Ct. 29, 185 A. 862, the decedent accidentally cut her finger and death resulted from streptococcic septicemia directly resulting from the injury to her finger. In the recent case of *Broad St. Tr. Co. v. Heyl Bros, et al.*, 128 Pa. Superior Ct. 65, 193 A. 397, the deceased accidentally cut his thumb while handling a barrel in the plant of his employer.

In *Sinkiewicz v. Susq. Collieries Co.*, 115 Pa. Superior Ct. 377, 175 A. 757, the injury was caused by inhalation of poisonous gas released by an explosion of dynamite.

In *Cline v. Studebaker Corp.*, 155 N. W. 519, (189 Mich. 514), cited by the board, a splinter of steel accidentally entered the employee's eye and the gonorrheal infection in that case resulted from attempts of fellow

employees to remove the obstruction. It was there properly held that the infection was a result of the accidental injury inflicted by the splinter of steel.

We think the most that could be said upon this branch of the case is that claimant's eye might be considered a port of entry for the destructive germs and if there appeared upon this record any competent evidence that claimant had, in fact, inadvertently, and within one week of October 26, 1935, wiped her eye with a piece of linen containing stains such as described by claimant, the judgment might be sustained. The chief difficulty is that we are unable to find such evidence. Dr. Mench in the course of his testimony said: "The only possible traumatism would be as a result of Mrs. Troxell wiping her eye with the towel. It might have traumatized the cornea if she didn't have her lids completely closed when she wiped her eye."

Claimant herself does not undertake to say that she did rub her eye within that period, or at any other time, with stained linen of any kind. On the contrary, she testified "we were careful not to touch these splotches." An excerpt from her testimony when she was under examination by the referee reads: "Q. Recall rubbing your eye on October 26th? A. I couldn't say that. We would have windows open very often and of course working around your hair will get in your face and it *may be* that the hair got in my face and I tried to wipe it out. Q. You recall at any time during the day of October 26th, you rubbed your eye? A. Certainly, when the eye watered. I thought I was taking a cold. Q. Put your handkerchief up to your eye? A. Yes, to rub it out." (Italics supplied)

It is perfectly clear that although afforded full opportunity to do so claimant did not fix any time or occasion upon which she rubbed her eye with soiled linen or with her hands shortly after handling such linen. Her only statement relative to rubbing her eye

with any article was that she rubbed it with her own handkerchief after the infection had developed.

But it is contended on behalf of claimant that certain opinions expressed by her medical experts constitute competent evidence sustaining both the finding that there was an "accident" and that it occurred in the course of claimant's employment. It is true that Dr. Mench said he believed claimant "received the infection" from handling linens and towels at the hotel. While under examination by the referee it clearly appeared that he based his opinion upon the false assumption that claimant had testified there was moist pus on the towels. When his attention was directed by the referee to the fact that claimant had not so testified and he was asked, in effect, how long gonococcic germs would live on linens or towels he fixed the time at twenty-four hours. This witness also conceded that claimant had not given him any history of having rubbed her eye. A question and answer from his examination read: "Q. You don't know whether or not when she was working at the hotel and handling these towels she then rubbed her eye? A. She made no definite statement concerning that to me." In conclusion he said it was scientifically possible that claimant could "have picked up this infection from some other place than her employment such as trolley car, door knob of a store or house, or some other object she might have touched."

Dr. Wenner, the other medical expert, expressed the opinion that claimant got the infection "from some pus or moist matter on one of those sheets and rubbed it in her eye." The ground given by him for his opinion was, "she gives the story of having handled these soiled linens and I assume that it is the place she got it; all other things are negative." This witness also conceded the claimant gave him no history of having rubbed her eye at the hotel after handling soiled linens. His views with reference to the possibility of having gotten

the infection elsewhere than at her employment were thus expressed: "Q. Know of any case where they ever got infection of this type going on a street car or in and out of a store and places like that? A. No. Q. Think it is possible to get infection in that manner? A. I do. Q. Think it is probable? A. Yes. Q. But in this particular case you feel this woman as you just testified got this infection in the course of her employment in the hotel? A. Yes. ...... Q. It would be possible to get it elsewhere? A. Yes, possible but not so likely."

Their opinions as to the manner in which the infection got into claimant's eye were sufficiently positive to meet the rule of *Fink v. Sheldon Axle & Spring Co.*, 270 Pa. 476, 113 A. 666. The trouble with them is that they were predicated neither upon facts shown by the evidence or within the personal knowledge of the witnesses; nor were they founded upon facts proven or admitted and submitted to them in the form of hypothetical questions. Those portions of their testimony, based as they were upon assumptions unsupported by evidence, or even by any statement made to them by claimant, were inadmissible for any purpose: *Jackson et ux. v. U. S. Pipe Line Co.*, 325 Pa. 436, 191 A. 165, and cases there cited.

The opinions of these experts with respect to the type of infection with which claimant was afflicted, the approximate date it entered, and the effect upon her eye of its development, relating as they did to matters not of common knowledge, were admissible and competent evidence of those facts. But the circumstance that these witnesses were physicians gave no more weight to their conjectures as to the way the infection was conveyed to the eye than would be given to similar testimony by a layman. It must be remembered that appellants were not required to prove that the infection came from a source other than that alleged by claimant, but she was required to prove by competent

evidence that it came from the source alleged by her.

It is suggested in the opinion of the court below that as guests arrive and depart daily at hotels and as the linens and towels had been removed before claimant had knowledge of her infection she should not be required, under the liberal provisions of the statute, to prove, by direct evidence, the actual presence of living gonococci upon those articles. This may be conceded. We do not hold that evidence of such a high type is essential to claimant's right to recover but we are of opinion that claimant, at least, had the burden of showing by competent evidence of some kind that within a week of the time her eye showed signs of infection she handled articles containing such stains as were described by her and inadvertently rubbed her eyeball with some of the stained linens or with her fingers. The record, as we have shown, is barren of any competent evidence of such acts upon her part. We are, therefore, obliged to conclude that the findings of the board upon which the award is based are without any support in the evidence.

There is force in the following criticism by counsel for appellants relative to the piling of one presumption upon another in this case: "The workmen's compensation board, in order to award compensation to the claimant, was obliged to presume that the soiled linens and towels which the claimant in the course of her employment handled, and the toilets which she was obliged to clean, were infected with gonococcic germs. Then the board made the further presumption that the claimant in some manner got some of the germs on her hands or on a towel; it then presumed further that the claimant rubbed her left eye either with a towel which was infected with gonococcic germs or rubbed her hand or fingers in her left eye when the same had gonococcic germs on them which germs got on the hand of the claimant while she was at work in the defendant's hotel,

or was on a towel with which she rubbed her eye while in the course of her employment."

Claimant was represented by counsel and was afforded every opportunity to state definitely facts which would have supported an award. With commendable frankness, she apparently declined to testify to any circumstances save those which were clearly within her recollection. No proper purpose would, therefore, be served by returning the record to the board for further hearing.

As it is clear under all the testimony that claimant, through no fault of her own or of her husband, has lost an eye from an infection, usually associated in the public mind with sexual acts, sympathy for her unfortunate condition naturally suggests an extension of the provisions of the statute beyond its well defined limits. This impulse, however, cannot be permitted to become the basis for an award.

The third assignment of error, based upon the dismissal of appellants' exceptions to the findings of fact and conclusions of law of the board and the entering of judgment by the court below upon the award, must be sustained.

Judgment reversed and here entered for appellants.