Rose, Appellant, *v.* Hoover.

Argued September 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Bruce E. Cooper*, with him *Charles E. Friedman*, *Richard S. Friedman*, and *Cooper, Friedman & Butler*, for appellant.

*James W. Evans*, with him *Goldberg, Evans & Katzman*, for appellee.

OPINION BY HOFFMAN, J., December 11, 1974:

Appellant, plaintiff below, won a jury verdict of $2,145. He then filed a motion for a new trial. The case is before this Court on an appeal from the judgment entered in the court below after denial of appellant's motion for a new trial. The appellant attacks the amount of the award of damages on several grounds.

On December 27, 1970, while Elbert H. Rose, appellant, was driving in New Cumberland, Pennsylvania, his automobile was struck from the rear by a vehicle operated by appellee, Charles Hoover. Immediately after the accident, appellant was taken by the police to a doctor for treatment. Thereafter, he returned home without being hospitalized. Because of continuing symptoms, he experienced difficulty in his employment as a truck driver; two weeks after the accident he was

admitted to Harrisburg Hospital. Initial diagnosis was that the dizziness experienced by the appellant was caused by cervical strain-soft tissue injury. Appellant's attending physician could not explain the persistent condition; he called in a psychiatrist who diagnosed the cause of appellant's symptoms as a psychoneurotic conversion reaction.[1] Symptoms that appellant's psychiatrist related to the psychiatric condition persisted at the time of the trial.

Appellant brought an action in trespass against appellee in which he claimed damages for permanent injuries. The action was tried in December, 1972. On December 14, 1972, the jury returned a verdict in the amount of $2,145. The issues on appeal concern the amount of the damage award; neither party challenges the finding of liability.

The appellant first contends that the lower court erred in allowing appellee's expert witness to testify after an in camera examination of the witness. He argues that the cross-examination in camera revealed that the expert's opinion was based solely on conjecture.

It is axiomatic that, if facts are in issue, an expert must base his opinion either on evidence adduced by one of the litigants or on facts observed personally. *Jackson v. U. S. Pipe Line Co.*, 325 Pa. 436, 191 A. 165 (1937); *Troxell v. Shirk*, 130 Pa. Superior Ct. 40, 196 A. 899 (1938); see also Henry, Pennsylvania Evidence, §561. Absent some basis in fact, opinion testimony is inadmissible and to admit such evidence would be an abuse of

---

[1] A psychoneurotic conversion reaction was defined as follows by Dr. Porr at trial: ". . . it is a type of neurotic disorder in which the patient seems to have symptoms of physical disease but in actuality there is no physical disease, there is nothing wrong with the body in a physical sense. The symptoms are emotionally based and the result of emotional disorder. . . . [T]he feelings are real, it is just that the cause is not organic . . . not caused by some damage to tissue. . . ."

the trial court's discretion. *Real Estate Trust Co. v. Metropolitan Life Ins. Co.*, 340 Pa. 533, 17 A. 2d 416 (1941) ; *Troxell,* supra. Once the court is satisfied that a basis in fact exists for the expert opinion, it is for the jury to determine the weight of the evidence.

In the present case, Dr. John Hume, a psychiatrist and appellee's expert witness, conducted a two and a half hour interview with appellant, reviewed depositions and various records relating to appellant's background, including histories of his employment, military service, and juvenile court record. In his brief, appellant argues that "[p]rior to [Dr. Hume's] taking the stand, counsel for the appellant . . . requested the Court to hear the doctor's testimony in camera to determine whether or not his testimony should be admissible in evidence, it being the position of the appellant that this testimony was based on conjecture. . . ." Contrary to appellant's assertion, however, the in camera examination of the witness revealed that he had adequate factual basis for his opinion. On direct examination at trial, the witness outlined the evidence necessary for a psychiatric diagnosis and presented his conclusions that appellant suffered from a personality disorder, not from psychoneurotic conversion reaction, and that he was a malingerer. On cross-examination, counsel for appellant questioned the doctor on the basis for his opinion in an attempt to show that the witness's conclusion was based on stale data.[2] Thus, appellant's

---

[2] For example, appellant cites the following testimony as proof that the doctor had no foundation for his opinion that appellant had a personality disorder, at least in as far as that conclusion was based on appellant's juvenile record:

Counsel for appellant: "Now, did you go into any details in terms of these juvenile arrests with him, the circumstances, how they occurred, who was the aggressor?

Dr. Hume: "No, I did not.

"Q. So you did not go into the details as to the circumstances of what happened in connection with those incidents, did you?

complaint is founded on information that he knew would be revealed by his counsel's cross-examination. He cannot now complain that he was prejudiced by the unsuccessful effort to show an insufficient basis for the expert's opinion.

The second alleged error is that cross-examination of appellant was improper because it inquired into prejudicial and inflammatory matters. Specifically, appellant was questioned about (a) the suspension of his motor vehicle license; (b) the purchase of a lightweight truck equipped for camping during a time when appellant was receiving welfare payments; (c) the introduction of false answers on his motor vehicle application for years 1970 and 1972.

The appellant's claim for damages included lost wages for a period of time which would have included the duration of the license suspension from September 15, 1971, to September 15, 1972. Possession of the license was essential to driving a truck, the only job that appellant chose to perform. Therefore, the subject was

---

"A. Not in detail, no.

"Q. Or the exact dates when they happened?

"A. Not exact dates, no. Mr. Rose is not able to give very many exact dates.

"Q. Well, did you specifically ask him what years these occurred?

"A. No, I didn't ask him the specific year.

"Q. Now, you say you based this on his eighteen months in the reformatory school?

"A. That was one of the factors involved, yes.

"Q. Did you inquire into the circumstances which resulted in his being put in the reform school?

"A. Yes, he said it was due to shoplifting.

"Q. Did you go into the details of that?

"A. I did not pursue it beyond his description of it being shoplifting.

"Q. Did you ask him what age it was?

"A. I didn't ask his specific age, no."

relevant to the amount of damages that appellant could claim.

Appellant's counsel made no objection when appellant was asked about his purchase of the camper; therefore, any error is waived. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A. 2d 114 (1974). Further, he testified that he bought the camper as a recreational vehicle. Whether he was ready and willing to drive a light truck was certainly relevant to his capacity to drive professionally. Likewise, no objection was made to questions concerning the receipt of welfare payments. In addition, the question was proper because appellant had testified on direct examination that he had kept his family together financially by going on welfare. Cf. *Gladden v. P. Henderson & Co.*, 385 F. 2d 480 (3d Cir. 1967).

Appellant also challenges questions that related to answers given by appellant on his motor vehicle applications for the years 1970 and 1972. One of the central issues involved in the case was whether the appellant's alleged symptoms were caused by a psychoneurotic conversion reaction or whether appellant was a malingerer. One of appellant's medical experts, Dr. George H. Porr, a phychiatrist, testified on cross-examination that his diagnosis was based on his assumption that appellant was being truthful and that a malingerer or an individual suffering from a personality disorder would be inclined to lie when it suited him. Hence, the failure to tell the truth on two occasions related to the injuries in issue was relevant to the jury's evaluation of Dr. Porr's conclusion.

The third allegation of error is that the lower court failed to limit the scope of cross-examination of Dr. Porr. On direct examination, Dr. Porr testified only to the fact that appellant suffered from a psychoneurotic conversion reaction. On cross-examination, appellee attempted to show that symptoms were caused by a per-

sonality disorder that led appellant to feign injury where none existed. Appellant argues that the questions put to the doctor relating to personality disorders were improper because they were beyond the scope of the direct examination.

Cross-examination is obviously important as a truth finding vehicle. Therefore, ". . . full latitude should be allowed to ascertain just what the factors were which the witness took into account in arriving at his conclusion and what, if any, he disregarded. . . ." *Stemons v. Turner,* 274 Pa. 228, 235, 117 A. 922 (1922). "It has been held that cross-examination may embrace any matter germane to the direct examination, qualifying or destroying it, or tending to develop facts which have been improperly suppressed or ignored by the plaintiff. . . ." *Steiner v. Ostroff,* 197 Pa. Superior Ct. 461, 465, 178 A. 2d 799 (1962) ; see also *Conley v. Mervis,* 324 Pa. 577, 188 A. 350 (1936) ; *Short v. Allegheny Trust Co.,* 330 Pa. 55, 198 A. 793 (1938).

Appellee's cross-examination placed before the appellant's expert facts (e.g., the appellant had a juvenile record and an undesirable discharge from the military) consistent with the theory that appellant suffered from a personality disorder. Dr. Porr agreed that such facts were consistent with appellee's theory and that he had not had all these facts before him when he made his diagnosis. If a personality disorder caused the appellant to feign his injuries, the defendants would not be liable for the damages claimed or medical expenses accrued after the original physical injuries had been treated and cured. Appellee was, therefore, entitled to examine appellant's witness to discover the basis of his expert opinion.

Finally, the appellant alleges that the jury verdict was inadequate. The award was in the amount of $2,-145. He contends that medical bills and lost wages to June 8, 1970, exceeded $2,400.

This Court has held compensable psychiatric injury similar to the condition complained of by the appellant. Cf. *Mapp v. Philadelphia*, 215 Pa. Superior Ct. 101, 257 A. 2d 306 (1969). The law is settled, however, that " 'neither a jury nor a judge who sees and hears the witnesses has to believe everything or indeed anything that a plaintiff (or defendant) or his doctor or his witnesses say even though their testimony is uncontradicted.' " *Rogers v. Hammett*, 229 Pa. Superior Ct. 6, 8-9, 323 A. 2d 394 (1974), citing *Kirby v. Carlisle*, 178 Pa. Superior Ct. 389, 393, 116 A. 2d 220 (1955). The jury could well have concluded that the wage loss claim was not genuine and that the hospitalization and medical expenses were unnecessary: "It is the province of the jury to disbelieve all or part of the testimony of the [plaintiff] and [his] witnesses, and thereafter compromise the verdict or so set that amount which it determined would compensate the [plaintiff] for [his] loss." *Rogers,* supra at 9.

The judgment is affirmed.