394 A.2d 1031

**Paul H. FOSTER, Appellant,**

v.

**McKEESPORT HOSPITAL, a corporation, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 23, 1977.

Decided Nov. 29, 1978.

---

486

488

Edward O. Spotts, Pittsburgh, with him James P. Gill, Pittsburgh, for appellant.

Richard S. Dorfzaun, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On January 7, 1972, appellant, Paul H. Foster, was injured when a boiler at McKeesport Hospital exploded. After the liability of the hospital had been established at a separate proceeding, a trial was held to determine the extent of appellant's damages. The jury returned a verdict of $11,-500. Appellant filed a motion for a new trial, alleging that the verdict was inadequate and assigning fifteen errors by the trial court. The lower court denied appellant's motion, and he now appeals.

As a preliminary matter, we must decide whether the errors assigned by appellant have been preserved for appeal. The lower court ruled, and the hospital as appellee argues to us, that appellant preserved only his objection to the adequacy of the verdict and an assignment of error regarding the cross-examination of appellee's expert witness. A review of the record reveals, however, that all but two of the errors assigned have been preserved.[1] The lower court's mistaken

1. The two exceptions are appellant's claims that the trial court erroneously refused to compel the production of certain hospital records and erroneously charged the jury concerning certain payments made by appellant's employer to appellant following the acci-

ruling resulted from a misapplication of the rule set forth in *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), that a specific exception at trial is needed to preserve an objection for appeal. Whenever counsel objects to a question asked by opposing counsel, and the objection is sustained, an exception is granted automatically; a formal request for an exception is unnecessary. *Commonwealth v. Alvin*, 257 Pa.Super. 290, 390 A.2d 827 (1978), *following Commonwealth v. Frazier*, 467 Pa. 505, 508, 359 A.2d 390, 391 (1976) (ROBERTS, J., concurring). While it is true that an objection to excluded testimony may be waived if counsel acquiesces in the exclusion without obtaining a ruling by the court, *Commonwealth v. Frazier, supra*, at 509, 359 A.2d at 391–92 (ROBERTS, J., concurring), that did not occur here. In each instance cited by appellant as an erroneous exclusion of testimony, appellant, through extended colloquy, obtained a ruling. Accordingly, we shall review appellant's objections to the rulings of the trial court, as well as the adequacy of the verdict.

■ Appellant's most substantial objection concerns the trial court's refusal to allow testimony by appellant's expert witness, Dr. Charles M. Reel, regarding the causation of appellant's cataracts. Prior to trial appellant was examined by several doctors. Dr. Carlisle E. McKee examined appellant in July 1973, approximately a year and a half after the accident. In connection with his examination, Dr. McKee prepared hand-written office notes and also, at the request of appellant's counsel, a type written pre-trial report. The report contained Dr. McKee's opinion that the accident caused the development of cataracts in both of appellant's eyes. Dr. McKee died before trial, however, and appellant was again examined, this time by Dr. Reel, in February

dent. Appellant himself admits that the record is silent regarding any request by him to the court that the hospital records be produced. Brief for Appellant at 33. As for the charge: Appellant took no exception to the charge, in spite of the trial court's invitation for specific exceptions; thus he has waived his right to object on appeal. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

1977. In May 1977, a videotaped deposition of Dr. Reel was made, which appellant offered into evidence at trial along with Dr. McKee's notes and report. The court admitted Dr. McKee's notes and report, but excluded those parts of Dr. Reel's deposition that dealt with the causation of appellant's cataracts.

In the crucial part of Dr. Reel's deposition, where the foundation for his opinion was laid, the doctor stated no basis for his opinion other than Dr. McKee's pre-trial report. Evidently, Dr. Reel was unable to determine causation from personal observation because by the time he saw appellant, appellant's cataracts had been surgically removed by a third doctor (who was not called at trial). Deposition of Dr. Reel at 18–19. When asked by appellant's counsel for the foundation of his opinion, Dr. Reel merely quoted verbatim a portion of Dr. McKee's report, in which Dr. McKee said that "the unusual types of posterior cortical and tabular sclerosis" and "the patient's history of being involved in a severe explosion" caused him to believe that appellant's condition was caused by trauma rather than natural causes. Dr. Reel then went on to say that knowing Dr. McKee "to have been a very competent opthamologist," he believed that Dr. McKee's observations and diagnosis were accurate.

A cardinal principle governing the admissibility of an expert opinion is that it be based upon a factual foundation. As this court stated in *Rose v. Hoover,* 231 Pa.Super. 251, 254–55, 331 A.2d 878, 880 (1974), "Absent some basis in fact, opinion testimony is inadmissible and to admit such evidence would be an abuse of the language discretion." *See Collins v. Hand,* 431 Pa. 378, 390–91, 246 A.2d 398, 404 (1968). Dr. Reel's opinion was based on nothing more than his belief that Dr. McKee was a competent physician known to make accurate observations. Under these circumstances, Dr. Reel was no more qualified than the jury to decide what caused appellant's cataracts; whether a given expert was competent and made accurate observations is a decision within the province of the jury, and to permit another expert to express himself on these matters would be a misuse of expert

testimony. *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 337, 319 A.2d 914, 923–24 (1974); *Stack v. Wapner,* 244 Pa.Super. 278, 368 A.2d 292 (1976).

■ Appellant complains that the trial court's ruling that Dr. Reel's testimony was inadmissible produced an inequitable result because testimony by appellee's expert witness, also based on Dr. McKee's notes and report, was admitted into evidence. But no inequity appears either from the trial court's ruling or the ruling today. At trial, the jury was allowed to hear what Dr. McKee, presumably, would have said, had he not died, through the introduction of the doctor's notes and report. When appellant offered the testimony of a second expert, Dr. Reel, to the effect that Dr. McKee had been a good doctor and that his conclusions were probably accurate, the court properly excluded the testimony. On the other hand, the court properly allowed appellee's witness, Dr. Francis G. Hurite, to testify on the basis of Dr. McKee's writings because his testimony was founded, not on an assessment of Dr. McKee's competency, but on a detailed analysis of the medical facts contained in those notes and report, combined with general medical knowledge obtained from his own experience and training. Because a proper factual foundation for his opinion was established, Dr. Hurite's testimony was properly admitted.

Appellant's next objection concerns the trial court's exclusion of further testimony by Dr. Reel, tracing the cause of appellant's alleged loss of equilibrium to the development of his cataracts. Dr. Reel testified that during his examination appellant had complained of a ringing in his ears and a loss of his sense of balance. Appellant's counsel then asked Dr. Reel to assume that an ear, nose, and throat specialist, Dr. Bernard Silverblatt, had eliminated the balance mechanism in the middle ear as a source of appellant's problem. A line of questioning developed subsequently wherein Dr. Reel stated that disequilibrium is caused either by a middle ear problem or an eye problem, and that since the middle ear had been eliminated as a cause by Dr. Silverblatt, the disequilibrium must have been caused by the formation of the cataracts.

■ Expert opinion testimony can be founded, of course, in part, on the opinions of other experts. *Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971). In the present case, however, Dr. Reel's testimony concerning the causation of appellant's disequilibrium was properly excluded as lacking a factual foundation. At trial, the court had previously excluded from evidence the very portion of Dr. Silverblatt's testimony that pertained to the causation of appellant's disequilibrium and served as the premise of Dr. Reel's conclusion. Appellant has not appealed the lower court's ruling on this point,[2] and because no other evidence was offered or introduced eliminating the middle ear as the cause of appellant's disequilibrium, Dr. Reel's testimony was based on assumed facts that the jury would not have been warranted in finding from the evidence. His testimony, therefore, was inadmissible. *Houston v. Canon Bowl, Inc.,* 443 Pa. 383, 385, 278 A.2d 908, 910 (1971); *Jackson v. United States Pipe Line Co.,* 325 Pa. 436, 440, 191 A. 165, 166 (1937).

■ Several objections by appellant relate to certain restrictions that the trial court placed on his cross-examination of appellee's expert witness, Dr. Hurite. These objections can be disposed of briefly. Appellant first complains that the trial court erroneously cut off his cross-examination of Dr. Hurite on the basis of a treatise entitled *Cyclopedia of Medicine and Surgery Specialties.* Much of that cross-examination consisted of appellant's counsel's reading of passages from the treatise and then asking Dr. Hurite whether he

2. Moreover, even if this court were to reach the merits of the trial court disallowance of Dr. Silverblatt's testimony, the ruling would have to be affirmed. Dr. Silverblatt testified in his videotaped deposition that he was willing to make a tentative assumption that appellant's disequilibrium was unrelated to an ear disorder, but that further testing was needed to substantiate his hypothesis. Deposition of Dr. Silverblatt at 10–11. In *Houston v. Canon Bowl, Inc.,* 443 Pa. 383, 278 A.2d 908 (1971), the Court reaffirmed the long-established standard that precludes testimony by expert witnesses that an injury "might have been" or "probably" was the result of a particular cause. Rather, the expert must testify that "in his professional [capacity] the result in question came from the cause alleged." 443 Pa. at 386, 278 A.2d at 910. *See Hussey v. May Department Stores, Inc.,* 238 Pa.Super. 431, 357 A.2d 635 (1976), and cases cited therein. Dr. Silverblatt's testimony did not meet this standard of certainty.

agreed or disagreed with the passages. Since Dr. Hurite did not recognize the treatise as authoritative, and its authority was not established in any other way, passages from it could not be read into the record. The trial court's ruling was therefore proper. *6 Wigmore, Evidence* § 1700 (Chadbourn rev. 1976). That Dr. Hurite admitted that he agreed with some of the statements in the treatise is immaterial. *Id.* Appellant next complains that he was not allowed to cross-examine Dr. Hurite concerning the cause of appellant's loss of equilibrium. However, Dr. Hurite did not give any testimony on direct examination on that issue, and as already noted, appellant failed to establish in his case-in-chief any causation for this ailment. Again, the trial court's ruling was proper. *Commonwealth v. Frazier,* 467 Pa. 505, 509, 359 A.2d 390, 391 (1976) (ROBERTS, J., concurring); *Woodland v. Philadelphia Transportation Co.,* 428 Pa. 379, 238 A.2d 593 (1968). Finally, appellant objects to the trial court's disallowance of cross-examination concerning the non-production by Dr. Hurite at the time of his deposition of a letter between the doctor and appellee's counsel. The trial court ruled that this line of questioning was irrelevant. In light of the fact that appellant had not asked the doctor to bring the letter with him, and also appellee's offer during the deposition to produce the letter, we cannot say that the trial court's ruling was an abuse of discretion.

Additional objections by appellant concern limitations placed on the evidence he offered in rebuttal. One limitation excluded testimony by appellant's employer to the effect that he was no longer willing to retain appellant as an employee because of appellant's disabilities. On direct examination appellant had testified that he had stopped working because of disabilities caused by the accident. Appellee entered no evidence during cross-examination or in his own presentation contradicting appellant on this point. The second limitation excluded testimony by appellant that he had been living on social security since he left his job. However, evidence was already before the jury by stipulation of counsel that appellant had earned $19,481.68 in the

year prior to the accident and had had no earned income in the years following. On these facts, the trial court's ruling were proper. Appellant was entitled to enter evidence in rebuttal only to refute evidence presented by appellee. *McCormick, Evidence* 5–6 (Cleary ed. 1972). Here, there was no evidence to refute.

 Appellant's final argument is that the verdict awarded him was grossly inadequate. As has been mentioned, the jury returned a verdict of $11,500. Appellant admits that all medical bills possibly related to the accident totalled no more than $2,200. No permanent physical injuries were proved. At the time of trial appellant's cataracts had been removed and his vision was normal. Other physical injuries were limited to first-degree burns, contusions, an ankle injury that required therapy, and a mild hearing loss. Causation of appellant's alleged loss of equilibrium was not shown. As for loss of earnings, the jury could properly have found that the loss was limited to the four-month period immediately following the accident.

The standard for reversal on the grounds of an inadequate verdict is very strict:

> "There should be nothing difficult about a decision to grant a new trial for inadequacy: the injustice of the verdict should stand forth like a beacon." So long as the verdict bears a reasonable resemblance to the damages proved, it is not the function of the court to substitute its judgment for that of the jury.

*Morris v. Peckyno,* 202 Pa.Super. 490, 492, 198 A.2d 396, 397 (1964), *citing Elza v. Chovan,* 396 Pa. 112, 118, 152 A.2d 238, 241 (1959). *See also Hussey v. May Department Stores, Inc.,* 238 Pa.Super. 431, 443–44, 357 A.2d 635, 641 (1976); *Rose v. Hoover,* 231 Pa.Super. 251, 331 A.2d 878 (1974); *Simmons v. Mullen,* 231 Pa.Super. 199, 214, 331 A.2d 892, 901 (1974). No doubt the verdict might have been more. Under the circumstances, however, we do not find the verdict so grossly inadequate as to shock our sense of justice.

Affirmed.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.