J-E02007-14

2014 PA Super 281

| | |
|---|---|
| JOSEPH AND APRIL PARR, HUSBAND AND WIFE, INDIVIDUALLY AND AS PARENTS AND NATURAL GUARDIANS OF SAMANTHA PARR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| FORD MOTOR COMPANY, MCCAFFERTY FORD SALES, INC. D/B/A MCCAFFERTY AUTO GROUP, MCCAFFERTY FORD OF MECHANICSBURG, INC., AND MCCAFFERTY FORD COMPANY, | |
| Appellees | No. 2793 EDA 2012 |

Appeal from the Judgment Entered on August 31, 2012
In the Court of Common Pleas of Philadelphia County,
Civil Division, at No. 002893, December Term, 2009.

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, J., SHOGAN, J., ALLEN, J., OTT, J., WECHT, J., STABILE, J., and JENKINS, J.

CONCURRING OPINION BY WECHT, J.:  **FILED DECEMBER 22, 2014**

It is a venerable, if somewhat time-worn, aphorism that hard cases make bad law. Thus, when confronted with a "hard" case that might be resolved on narrow grounds, it is prudent to rule no more broadly than necessary. It is out of this concern that I depart to varying degrees from the learned majority's reasoning on three of the four issues before us, although, for the reasons set forth below, I join the majority's affirmance of the judgment entered by the trial court.

To begin, I join the majority's rejection of Joseph and April Parr's claim, presented on appeal as their first issue, that the trial court erred or abused its discretion in admitting evidence submitted by Ford Motor Company ("Ford") in support of its "diving/torso augmentation" theory of causation. Notwithstanding the Parrs' strenuous argument to the contrary,[1] there is an ongoing debate among experts regarding whether and to what extent "diving," "torso augmentation," and "roof crush" may be responsible in a given rollover accident for severe injuries and death. Where qualified experts venture competing theories, each to a reasonable degree of scientific certainty based upon information and analyses regularly relied upon by their scientific communities, the jury, not the court, must resolve the disagreement. *See generally Rose v. Hoover*, 331 A.2d 878, 880 (Pa. Super. 1974) ("Once the court is satisfied that a basis in fact exists for the expert opinion, it is for the jury to determine the weight of the evidence.").

In their second issue, the Parrs contend that the trial court abused its discretion in granting Ford's motion *in limine* to exclude studies and data associated with rule-making by the National Highway and Transportation

---

[1] *See* Brief for the Parrs at 26 ("Although [the National Highway and Transportation Safety Administration's] 'roof crush' theory versus the [automobile] industry's 'diving/torso augmentation' theory was a heavily contested issue for years prior to 2001, the year of the [Ford] Excursion's manufacture, in 2009, NHTSA determined once and for all that 'roof crush' and not 'diving/torso augmentation' was a potential cause of head and neck injuries—such as those sustained by Mrs. Parr—among belted occupants in rollover accidents." (emphasis omitted)).

Safety Administration ("NHTSA") concerning vehicle roof strength standards that post-dated the date of manufacture of the 2001 Ford Excursion at issue in this case. The trial court, noting that post-manufacture standards have no bearing on the determination whether a given product is defective for purposes of a products liability claim, deemed the post-2001 proceedings leading up to the 2009 amendment to the Federal Motor Vehicle Safety Standard[2] irrelevant and excludable as such. **See** Trial Court Opinion ("T.C.O."), 3/1/2013, at 4-5; **Duchess v. Langston Corp.**, 769 A.2d 1131, 1142 (Pa. 2001) ("[P]roducts are to be evaluated at the time of distribution when examining a claim of product defect.").

Before this Court, however, the Parrs do not contend that they sought the admission of this evidence for purposes of establishing a product defect. Rather, they contend that they sought to introduce the post-2001 rule-making proceedings to establish that roof crush, rather than diving/torso augmentation, caused Mrs. Parr's catastrophic injuries in this case, as well as to impeach Ford's witnesses who maintained otherwise. Brief for the Parrs at 34-36. They further assert that this evidence was admissible to establish the foundation for their causation experts' opinions. **Id.** at 36-37.

---

[2] **See** Federal Motor Vehicle Safety Standards; Roof Crush Resistance; Phase-In Reporting Requirements, 74 Fed. Reg. 22348 (May 12, 2009).

The majority recites a litany of bases upon which to reject the Parrs' arguments.[3]  First, the majority notes the limited utility of this evidence for purposes of impeaching Ford's experts' attribution of Mrs. Parr's injuries to diving/torso augmentation, because Ford's experts conceded that roof crush may contribute to injury in certain cases.  Maj. Op. at 23 (citing testimony).  Because the majority finds—and I agree—that the documents in question reflected only NHTSA's conclusion that "roof crush is one of several potential causes of injury in rollover accidents," *id.*, albeit perhaps in stronger terms than NHTSA previously had used,[4] and that Ford's experts admitted as much, "the documents in question did not make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  *Id.* (citing Pa.R.E. 401 ("Test for Relevant Evidence")).

The majority also seems to assert that the Parrs successfully put the post-2001 rule-making before the jury in any event.  *Id.*  However, the majority's citations in support of that proposition do not sustain it.  For

_____

[3]  The majority reaffirms the trial court's rejection of this evidence for the purpose of establishing the defectiveness of the Ford Excursion when it left Ford's possession.  Maj. Op. at 22-23.  Because the Parrs do not pursue this issue on appeal, this commentary is *dicta*, albeit *dicta* based upon sound and settled law.

[4]  *See* 74 Fed. Reg. at 22379 ("[NHTSA] believes that the statistically significant relationship between roof intrusion and belted occupant injury . . . indicates not just a suggestion, but a probability that increasing roof strength reduces injury.").

example, the majority cites a passage from the Parrs' cross-examination of defense expert Michael Leigh, but the only NHTSA-related question posed to Leigh in the cited passage was as follows: "Do you not agree that all of the studies of NHTSA, all of the studies of academia, all of the studies except the ones where GM or Ford engaged the people [who] said that this is wrong, all of the studies say that; do they not?" **See** Notes of Testimony ("N.T."), 3/7/2012 (morning), at 63. Nothing about the context or wording of this question suggests that the Parrs were confronting Leigh with post-2001 data or studies. Similarly, the majority's citation of the testimony of Catherine Corrigan, Ph.D., on cross-examination concerned references to NHTSA findings in a 1995 article, which could not have invoked post-2001 NHTSA data or proceedings. **See** N.T., 3/19/2012 (afternoon), at 30-36.[5,6] More saliently, the majority observes that the excluded evidence ultimately was cumulative to the frequent and repeated introduction in impeachment of pre-2001 NHTSA findings that tended to support a causal connection between roof crush and serious injury, albeit in less affirmative terms than NHTSA

_____

[5] During the cited colloquy, the Parrs did refer to 2007 and 2008 studies, but those are distinct from the categorically excluded NHTSA rule-making evidence. I discuss non-NHTSA studies published after 2001 in connection with the Parrs' third issue, *infra*.

[6] The majority also cites in support of this claim comments in the Parrs' closing argument. Argument is not evidence. Accordingly, such comments are no substitute for evidence that is excluded improperly.

used in connection with its 2009 amendment to Rule 216. Maj. Op. at 23-24 (citing testimony).

Finally, the majority correctly notes that the erroneous exclusion of admissible evidence requires relief only when the exclusion causes the complaining party prejudice. *Id.* at 24 (citing *Winschel v. Jain*, 925 A.2d 782, 794 (Pa. Super. 2007)). The majority concludes that any error in this instance was harmless because the evidence in question pertained to causation, but the jury, having concluded that the 2001 Ford Excursion was not defective, never reached the question of what caused Mrs. Parr's injuries. *See id.*

It is this last aspect of the majority's ruling that troubles me most. While the multifactorial framework for establishing a strict products liability claim[7] is an important tool in giving shape to the plaintiff's burden of proof, the line between defect and causation sometimes blurs. For example, if the Parrs could establish that the overwhelming majority of rollover injuries and fatalities in other Ford Excursions arise from roof crush rather than diving/torso augmentation, and if the death or injury rate for Ford Excursions in accidents similar to the accident at bar was substantially higher than it is for other comparable vehicles, that might militate in favor of

_____

[7] *See* Maj. Op. at 7 ("In order to prevail in . . . a product liability case, the plaintiff must establish: (1) that the product was defective; (2) that the defect existed when it left the hands of the defendant; and (3) that the defect caused the harm.").

a finding of product defect. Thus, the validity of such evidence sometimes will affect the defect determination, even if it is presented nominally in support of causation. I would not say that an erroneous exclusion of such evidence, even if ventured primarily to establish causation, is harmless as a matter of law simply because the jury, faced with the evidence actually admitted at trial and ignorant of the evidence excluded, determined that the Excursion was not defective.

That being said, the entwinement of these considerations in a case like this raises countervailing concerns of particular application to this case. Pennsylvania Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, . . . or needlessly presenting cumulative evidence." This Court has acknowledged that the probative value of prior accident evidence "is tempered by judicial concern that the evidence may raise collateral issues, confusing both the real issue and the jury." ***Whitman v. Riddell***, 471 A.2d 521, 523 (Pa. Super. 1984) (citing ***Stormer v. Alberts Constr. Co.***, 165 A.2d 87, 89 (Pa. 1960)); ***cf. Mt. Olivet Tabernacle Church v. Edwin L. Wiegand Div.***, 781 A.2d 1263, 1275 (Pa. Super. 2001) (acknowledging the possibility that "an open-ended argumentative exploration of possible similar incidents will confuse the jury and prejudice the defendant"). Moreover, other jurisdictions' case law and common sense soundly suggest that the introduction of government findings and standards

may have an outsized prejudicial effect on a jury's deliberations with respect to the issues to which the evidence pertains. *See* Brief for Ford at 29 (citing *City of New York v. Pullman*, 662 F.2d 910, 915 (2d Cir. 1981); *Cover v. Cohen*, 61 N.Y.2d 261, 272 (N.Y. 1984)). Finally, because the governing standards require a plaintiff to establish that the allegedly defective product was defective at the time the manufacturer relinquished that product, evidence of post-manufacture standards and laws is not relevant to the question of design defect. *See Duchess*, 769 A.2d at 1142. Consequently, the admission of NHTSA's post-2001 rule-making might have confused and unduly swayed the jury on the question of product defect, even if the trial court directed the jury to weigh NHTSA's conclusions only in considering causation. Furthermore, the potential for prejudice would be considerable.

Conversely, while NHTSA's 2009 rule was based upon a stronger conclusion than it previously had reached regarding the correlation of roof crush and serious injury, it was not novel to NHTSA. As evinced by the very promulgation of roof strength standards nearly thirty years earlier, by 2001, NHTSA effectively had maintained for decades that mitigation of roof crush would reduce the risk of injury in rollover accidents. The Parrs undisputedly were allowed to introduce evidence of NHTSA's pre-2001 analyses and rule-making on this topic, an opportunity of which they availed themselves repeatedly. *See* Maj. Op. at 23-24 (citing various instances of the Parrs' reliance in cross-examination on pre-2001 NHTSA commentary). Furthermore, Ford's experts conceded that roof crush could cause or

contribute to serious injuries in certain rollover accidents. Thus, while the evidence in question would be highly prejudicial, its probative value in support of causation would be quite limited.

While by and large I agree with the majority's reasoning, I believe that it is insufficiently sensitive to the complex balance of probative value and prejudicial effect such evidence may present in certain cases, including in this one. Thus, I believe that it is neither necessary nor advisable to opine that this evidence's exclusion was harmless as a matter of law. However, because the thrust of nearly thirty years of NHTSA discussions of the likely correlation between roof crush and injury was set before the jury and Ford's expert witnesses acknowledged that roof crush might cause injury in certain circumstances, the jury was aware of the data and arguments supporting the Parrs' roof crush theory of causation. Measured against the risk of prejudice highlighted above, and viewed in light of our considerable deference to trial courts' evidentiary rulings, *see **Keystone Dedicated Logistics, LLC v. JGB Enters., Inc.**, 77 A.3d 1, 11 (Pa. Super. 2013), I cannot conclude that the trial court abused its discretion in excluding this evidence. Consequently, I would avoid the question of harmlessness, which need not be reached to affirm the ruling in this case, thus avoiding any risk that the concept might be applied too broadly in a future case.

The Parrs' third and related issue concerns the trial court's order granting Ford's motion *in limine* number 9. Therein, Ford maintained that the Parrs' expert reports "rely on . . . statistical studies and compilations

involving motor vehicle accident data to reach conclusions that the subject Excursion . . . caused [the Parrs'] injuries. . . . [E]ach of these statistical studies is irrelevant and inadmissible [because the Parrs] cannot show that each [underlying] accident occurred under substantially similar circumstances as the Parr accident." Memorandum of Law in Support of Ford's Motion *in Limine* No. 9 at 3-4. As well, Ford urged the trial court to find that, even if relevant, the experts' supporting studies and datasets were so prejudicial in effect as to eclipse their probative value. **See** Pa.R.E. 403.

The majority provides an accurate account of the relevant law. **See** Maj. Op. at 28-30. For my purposes, it suffices to say that the proponent of prior accident evidence bears the burden of establishing that the prior accident or accidents are substantially similar to the accident at issue. **See Blumer v. Ford Motor Co.**, 20 A.3d 1222, 1228 (Pa. Super. 2011). "It is not a matter of finding exact similarity between the incidents, but some similarity must be shown to prevent speculation." **Harkins v. Calumet Realty Co.**, 614 A.2d 699, 705 (Pa. Super. 1992). Under Pennsylvania law, this burden applies equally whether the evidence in question consists of a single accident or a statistical compilation of accidents. **See Hutchinson v. Penske Truck Leasing Co.**, 876 A.2d 978, 985-86 (Pa. Super. 2005). Furthermore, in **Hutchinson**, this Court held that the proponent must establish the substantial similarity of the accidents underlying a compilation to the accident *sub judice* regardless of whether it is submitted to establish the existence or notice of a defect or causation.

*Id.* at 985 (citing *Spino v. John S. Tilley Ladder Co.*, 671 A.2d 726, 735 (Pa. Super. 1996)). In *Hutchison*, we found reversible error where the trial court admitted prior accident evidence, ostensibly to establish the defendant's state of mind for purposes of punitive damages, where the plaintiff failed to establish substantial similarity of the prior accident evidence. *Id.* at 985-86; *see also generally Majdic v. Cincinnati Mach. Co.*, 537 A.2d 334, 341 (Pa. Super. 1988). Therefore, the Parrs have no obvious source of relief for their burden of establishing the requisite similarity, which I would find that the Parrs did not meet.

In their opposition to Ford's motion *in limine*, the Parrs were vague about precisely what studies and data compilations they wished to admit. More importantly, they never expressly sought to establish with particularity that each study and data compilation was compiled from accidents that were substantially similar to their own. Instead, they adopted a somewhat dubious interpretation of the deposition testimony of one of Ford's expert witnesses in another case as evidence that Ford somehow had conceded that "there is a direct relationship between the amount of roof crush and the risk of serious head, face, and neck injuries in rollover crashes," a proposition that, in any event, did not establish substantial similarity. The Parrs' Memorandum of Law in Opposition to Ford's Motion *in Limine* No. 9 at 5 (quoting deposition of Jeff Croteau, in which he appears to agree that there is a correlation between a "higher degree of roof collapse" and "a higher degree of head injury," but rejects the inference of causation between roof

crush and injury exacerbation). Later, the Parrs argued that the evidence was admissible in the alternative to provide the foundation for their experts' opinions, *see* Pa.R.E. 703, or for purposes of impeachment of the credibility of Ford's expert witnesses, *see* Pa.R.E. 607(b). *See* The Parrs' Memorandum of Law in Opposition to Ford's Motion *in Limine* No. 9 at 8-9. However, the Parrs never made a case for the substantial similarity of the accidents underlying any one study or data compilation. Oral argument on the parties' motions *in limine* brought no more information pertinent to the substantial similarity inquiry. In short, the Parrs failed to do before the trial court—and largely fail to do before this Court—what the law obliged them to do in order to rebut Ford's assertion that these studies were inadmissible for want of sufficient similarity.

As a rule, arguments not materially preserved in the trial court are beyond our purview. *See* Pa.R.A.P. 302(a); *cf. **Commonwealth v. May***, 887 A.2d 750, 761 (Pa. 2005) ("The absence of contemporaneous objections renders . . . claims waived."); ***Commonwealth v. Baumhammers***, 960 A.2d 59, 73 (Pa. 2008) (deeming the absence of contemporaneous objections to constitute waiver notwithstanding the appellant's claim that the issues in question were raised before trial). Furthermore, while the Parrs asserted in their post-trial motion their general contention that the trial court improperly and categorically excluded post-2001 studies and compilations of data, they again failed to identify with particularity each study or data compilation **and** a basis upon which the trial court reasonably could find that

the substantial similarity test was satisfied. This, too, constitutes waiver. *See* Pa.R.C.P. 227.1; ***Phillips v. Lock***, 86 A.3d 906, 918 (Pa. Super. 2013) (deeming waived for purposes of appeal issues that were not objected to at trial or raised in post-trial motions).

The majority so holds, but in doing so it arguably makes substantive conclusions about the evidence in question, notwithstanding the waiver consideration that, elsewhere, the majority seems to find dispositive. ***See*** Maj. Op. at 30-31. In particular, the majority, like the trial court, seems to put a great deal of stock in the distinction between accident fatalities and the accident in question. ***See id.*** at 30; T.C.O. at 6-7. I would not suggest that such a distinction, standing alone, warrants a finding that a study is not sufficiently similar to be admitted, and it troubles me that the majority's opinion may, in a later case, be cited for that proposition. Whether a given injury leads to death (as was true in at least some of the compilations at issue) or quadriplegia (as is true in this case) may reflect a difference of degree rather than one of kind in the product defect and events that caused the injury. In this case, Mrs. Parr suffered a severed spinal cord. Certainly, a small difference in the kinematics of the injury could have resulted in fatal injury arising from a similar or identical mechanism, which,

in turn, might support a finding of substantial similarity, provided other factors, too, pointed to that conclusion.[8]

Because I believe that the Parrs barely even tried to establish the substantial similarity of the studies and data compilations in this case, I would not reach the merits of their challenge to the trial court's substantive findings as to substantial similarity. I would reject the Parrs' argument solely because they waived it. Accordingly, the details of the parties' dialogue with the trial court on the issue, as well as the trial court's own reasoning, are immaterial to this appeal. The Parrs simply failed to make the showing necessary to establish a basis for such a detailed review of the studies. I would deny relief strictly on that basis.

Finally, following considerable deliberation, I join the majority's ruling rejecting the Parrs' challenge to the trial court's decision to issue a permissive adverse inference instruction based upon the Parrs' alleged spoliation of the evidence, albeit with one reservation. The majority notes that the governing standard in determining whether a spoliation sanction is warranted requires the trial court to determine, *inter alia*, the degree of fault of the party who rendered the evidence unavailable and the degree of prejudice suffered by the opposing party arising from the unavailability of

_____

[8]    In fairness to the majority, it notes other gaps in the Parrs' showing that the trial court did not address. Nonetheless, these unnecessary analyses, too, might provide bases for questionable rulings in future cases.

the evidence. Fault is determined by examining the alleged spoliator's duty to preserve the evidence and the presence or absence of bad faith. Finally, duty is established where the party responsible for the evidence knows that litigation is pending or likely and it is foreseeable that discarding the evidence would prejudice the defendants. *See* Maj. Op. at 34 (quoting *Creazo v. Medtronic, Inc.*, 903 A.2d 24, 28-29 (Pa. Super. 2006)).

The majority contends that "there is no dispute that the Parrs were responsible for the destruction of the Excursion and[,] thus, were at fault." *Id.* at 35. However, this conclusion skips a critical analytic step in imputing fault to a party accused of failing to preserve evidence material to litigation. *Cf. Eichman v. McKeon*, 824 A.2d 305, 314-15 (citing *Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D.Pa. 1994) for the proposition that "a component of fault is the presence or absence of good faith"). While it is undisputed that the Parrs relinquished the Excursion to their insurance company, it is not clear what, if any, representations or demands were made by the insurance company or by the Parrs or their counsel. Even if this does not implicate their legal duty, it certainly implicates the determination whether the Parrs acted in bad faith, an explicit element of the test for fault.

That modest reservation aside, I believe that our Supreme Court's decision in *Schroeder v. Commonwealth, Dep't of Transp.*, 710 A.2d 23 (Pa. 1998), requires affirmance. In that strict products liability case, unlike in this case, the record indicated that plaintiff's counsel had made arrangements to preserve the damaged vehicle, agreeing to remit a storage

- 15 -

fee to the company that salvaged the vehicle. Only later, the plaintiff released title to the insurance company. Thereafter, the insurer released title to the salvage company, which then disposed of the vehicle before certain experts could examine it, despite the pending litigation. *Id.* at 24-25. Our Supreme Court ruled that the trial court and Commonwealth Court had erred in granting summary judgment, the most extreme sanction for spoliation, and a ruling that reflected the trial court's finding of bad faith. However, the Court directed that, on remand, the trial court provide an adverse inference instruction to the jury based upon the plaintiff's failure to preserve evidence that was manifestly material to their claims. *Id.* at 28. Given that the Supreme Court **compelled** the administration of such a jury instruction under circumstances where fault was no more clearly—and perhaps less clearly—established than in this case, thereby implicitly affirming the trial court's finding of bad faith, it would be incongruous to intrude upon the trial court's discretionary determination that such an instruction was called for in this case. Hence, like the majority, I would uphold the trial court's decision in this regard.

Judge Ott joins this concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/22/2014</u>